# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE THE HONORABLE M. MILLER BAKER, JUDGE

|  |  |
|---|---|
| DAIKIN AMERICA, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> THE UNITED STATES, <br><br> *Defendant,* <br><br> GUJARAT FLUOROCHEMICALS LIMITED, <br><br> *Defendant-Intervenor.* | **NON-CONFIDENTIAL VERSION** <br><br><br> Court No. 22-00122 <br><br> Confidential Business Proprietary Information Deleted from Pages: 9 & 10 |

## DEFENDANT-INTERVENOR GUJARAT FLUOROCHEMICALS LIMITED'S RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Jessica R. DiPietro
Matthew M. Nolan
John M. Gurley

ArentFox Schiff LLP
1717 K Street, NW
Washington, DC  20006
Tel: (202) 857-6301

January 13, 2023

*Counsel for Gujarat Fluorochemicals Ltd.*

AFDOCS:26823511.1

**TABLE OF CONTENTS**                                                   **Page**

I.    SUMMARY OF THE ARGUMENT ................................................ 2

II.   ARGUMENT ....................................................................... 3

      A.   Commerce's Determination To Rely On GFCL's
           Reported U.S. Movement Expenses For Domestic
           Inland Freight (DINLFTPU), International Freight
           (INTNFRU), And Domestic Inland Insurance
           (INSUREU) Is Based On Substantial Evidence And In
           Accordance With Law ........................................... 3

           1.   Legal Standard ............................................. 4

           2.   GFCL's Allocation Methodology is Reasonable
                and Supported by Record Evidence .............................. 6

           3.   Commerce's Decision to Not Recalculate GFCL's
                Reported Movement Expenses on an Overall
                Average Basis is Based on Substantial Evidence ...... 12

      B.   Application Of Partial AFA Or Recalculating GFCL's
           Reported Movement Expenses Based On Facts
           Available Is Unwarranted ....................................... 14

           1.   Legal Standard ............................................. 15

           2.   Neither the Law Nor Record Evidence Support an
                Application of Facts Available or Facts Available
                with an Adverse Inference ........................................ 16

      C.   Commerce's Determination To Grant GFCL A CEP
           Offset Is Based On Substantial Evidence And In
           Accordance With Law ........................................... 20

           1.   Legal Standard ............................................. 22

           2.   GFCL Properly Built the Record for Commerce to
                Grant a CEP Offset ................................................ 24

III.  CONCLUSION ................................................................... 30

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*BMW of N. Am. LLC v. United States,*
926 F.3d 1291 (Fed. Cir. 2019) .......................................................... 16

*Bowman Transp., Inc. v. Ark-Best Freight System, Inc.,*
419 U.S. 281 (1974) ............................................................................ 24

*Corus Eng'g Steels Ltd. v. United States,*
27 CIT 1286 (2003) ............................................................................ 26

*Hyundai Steel Co. v. United States,*
518 F. Supp. 3d 1309 (Ct. Int'l Trade 2021) ........................... 15, 16, 29

*Jiaxing Brother Fastener Co. v. United States,*
428 F. Supp. 3d 1364 (Ct. Int'l Trade 2020) ...................................... 23

*Nat'l Nail Corp. v. United States,*
390 F. Supp. 3d 1356 (Ct. Int'l Trade 2019) ...................................... 15

*Nippon Steel Corp. v. United States,*
337 F.3d 1373 (Fed. Cir. 2003) .......................................................... 15

*NSK Ltd. v. United States,*
346 F. Supp. 2d 1312 (Ct. Int'l Trade 2004), *aff'd,* 481 F.3d
1355 (Fed. Cir. 2007) ................................................................... 17, 18

*Qingdao Sea-Line Trading Co. v. United States,*
766 F.3d 1378 (Fed. Cir. 2014) .......................................................... 23

*SNR Roulements v. United States,*
341 F. Supp. 2d 1334 (Ct. Int'l Trade 2004) ................................. 5, 19

*Torrington Co. v. United States,*
965 F. Supp. 40 (Ct. Int'l Trade 1997) .................................................. 5

## Federal Statutes

19 U.S.C. § 1677a(c)(2)(A) ........................................................... 4

19 U.S.C. § 1677b(a)(7)(A) ......................................................... 23

19 U.S.C. § 1677b(a)(7)(B) ............................................. 22, 23, 25

19 U.S.C. § 1677e(a) ........................................................... 15, 17

19 U.S.C. § 1677e(b) ................................................................. 15

19 U.S.C. § 1677m(d) ......................................................... 15, 29

## Regulations

19 C.F.R. § 351.401(g) ................................................................. 3

19 C.F.R. § 351.401(g)(1) .................................... 4, 9, 19, 20

19 C.F.R. § 351.401(g)(2) ............................................................. 5

19 C.F.R. § 351.401(g)(3) .................................... 5, 18, 20

19 C.F.R. § 351.412(d) ............................................................... 23

19 C.F.R. § 351.412(f) ....................................... 22, 23, 25

## Administrative Determinations

*Common Alloy Aluminum Sheet From Turkey*, 86 Fed. Reg.
    13326 (Dep't of Commerce Mar. 8, 2021) (final affirm.
    LTFV determ.), and accompanying Issues and Decision
    Memorandum .......................................................... 5, 11, 12

*Granular Polytetrafluoroethylene Resin From India*, 86 Fed.
    Reg. 49299 (Dep't Commerce Sept. 2, 2021) (prelim.
    affirm. LTFV determ.), and accompanying Decision
    Memorandum ....................................................... 20, 25, 27

*Granular Polytetrafluoroethylene Resin From India*, 87 Fed.
Reg. 3772 (Dep't Commerce Jan. 25, 2022) (final LTFV &
critical circum. determ.), and accompanying Issues and
Decision Memorandum ............................................................. *passim*

*Granular Polytetrafluoroethylene Resin From India and the
Russian Federation: Antidumping Duty Orders*,
87 Fed. Reg. 14514 (Dep't Commerce Mar. 15, 2022)
(order) ............................................................................................... 2

*Polytetrafluoroethylene Resin From India*, 83 Fed. Reg.
48594 (Dep't of Commerce Sept. 26, 2018) (final affirm.
LTFV determ.), and accompanying Issues and Decision
Memorandum ...................................................................... 13

*Polyethylene Terephthalate Sheet from the Republic of Korea*,
85 Fed. Reg. 44276 (Dep't Commerce July 22, 2020) (final
LTFV determ.), and accompanying Issues and Decision
Memorandum ...................................................................... 28

## Other Authorities

*Statement of Administrative Action accompanying the
Uruguay Round Agreements Act* ("SAA"), H.R. Rep. No.
103–316, vol. 1 (1994), *reprinted in* 1994 U.S.C.C.A.N.
4040 .................................................................................... 24

# GLOSSARY OF TERMS

| | |
|---|---|
| AFA | Adverse Facts Available |
| CEP | Constructed Export Price |
| CAAS | Common Alloy Aluminum Sheet |
| DINLFTPU | Domestic Inland Freight |
| EP | Export Price |
| GFCL | Gujarat Fluorochemicals Limited |
| IDM | Issues and Decision Memorandum |
| INLFPWU | U.S. Inland Freight from Port to Warehouse |
| INSUREU | Domestic Inland Insurance |
| INTNFRU | International Freight |
| USBROKU | Brokerage and Handling in the United States |
| INSUREU | Country Of Manufacture Inland Insurance |
| PDM | Preliminary Decision Memorandum |
| POI | Period of Investigation |
| POR | Period of Review |
| PTFE resin | Polytetrafluoroethylene Resin |
| SAA | *Statement of Administrative Action accompanying the Uruguay Round Agreements Act* |
| USWAREHU | U.S. Warehouse Expenses |

**UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE M. MILLER BAKER, JUDGE**

| | |
|---|---|
| DAIKIN AMERICA, INC., ) | **<u>NON-CONFIDENTIAL</u>** |
| ) | **<u>VERSION</u>** |
| *Plaintiff,* ) | |
| v. ) | |
| ) | |
| THE UNITED STATES, ) | |
| ) | Court No. 22-00122 |
| *Defendant,* ) | |
| ) | Confidential Business |
| GUJARAT FLUOROCHEMICALS ) | Proprietary Information |
| LIMITED, ) | Deleted from Pages: 9 & 10 |
| ) | |
| *Defendant-Intervenor.* ) | |
| ) | |

**DEFENDANT-INTERVENOR GUJARAT FLUOROCHEMICALS
LIMITED'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY
RECORD**

Defendant-Intervenor Gujarat Fluorochemicals Limited ("GFCL")

respectfully submits this response brief in opposition to Plaintiff Daikin

America, Inc.'s ("Daikin" or "Plaintiff") Motion for Judgment on the

Agency Record dated September 19, 2022, ECF No. 22 ("Pl. Br."). The

administrative determination challenged in this appeal is the U.S.

Department of Commerce's ("Commerce") final determination in the

antidumping duty investigation of granular polytetrafluoroethylene

1

("PTFE") resin from India. *Granular Polytetrafluoroethylene Resin From India*, 87 Fed. Reg. 3772 (Dep't Commerce Jan. 25, 2022) (final LTFV & critical circum. determ.), Appx01076–01078 ("*Final Determination*"), and accompanying Issues and Decision Memorandum, Appx01055-01075 ("*IDM*"); *see also Granular Polytetrafluoroethylene Resin From India and the Russian Federation: Antidumping Duty Orders*, 87 Fed. Reg. 14514 (Dep't Commerce Mar. 15, 2022) ("*Order*"), Appx01079-01081. Defendant United States ("Defendant") filed its response brief on December 9, 2022, ECF 27 ("Def. Br.").

Defendant-Intervenors agree with Defendant's response brief. To minimize repetition, GFCL incorporates by reference the issues presented for review, the statement of the facts, and the arguments as presented in Defendant's response brief. For the reasons provided below, and those reasons discussed in Defendant's response brief, GFCL requests that this Court sustain Commerce's *Final Determination* and reject Plaintiff's arguments.

## I.   SUMMARY OF THE ARGUMENT

Commerce's determination to rely on GFCL's reported U.S. movement expenses, without any recalculation on an overall average

2

basis is in accordance with law and based on substantial evidence.

Commerce lawfully declined to apply facts available with an adverse inference with respect to GFCL's reported movement expenses.

Commerce's determination to continue to grant GFCL a constructed export price ("CEP") offset is based on substantial evidence and in accordance with law.

## II.   ARGUMENT

### A.   Commerce's Determination To Rely On GFCL's Reported U.S. Movement Expenses For Domestic Inland Freight (DINLFTPU), International Freight (INTNFRU), And Domestic Inland Insurance (INSUREU) Is Based On Substantial Evidence And In Accordance With Law

Daikin's argument hinges on two parts, neither of which is successful. First, Daikin argues that Commerce requested and, thus, required "transaction-specific movement costs" as "embodied in the law at 19 C.F.R. § 351.401(g)." Pl. Br. at 24. Neither is true. The law does not require transaction specific movement costs and, accordingly, Commerce did not require as such from GFCL. Thus, GFCL responded to Commerce's alternative request and reported the unit cost of its moving expenses on an allocated basis. Second, Daikin cherry-picks the record evidence to make sweeping statements about GFCL's reporting

3

abilities, claiming that "GFCL's own sales records showed it was feasible to report its U.S. movement expenses on a transaction-specific basis." *Id.* at 17. To the contrary, as explained below, GFCL did not maintain in the normal course of business reporting of movement expenses for sales made out of the U.S. warehouses and, thus, could not "establish a one-to-one correlation between warehousing expenses and sales." GFCL Second Supplemental Sections A&C Questionnaire Response (Part II-Questions 1, 2, 4 & 7) at 3 (Aug. 9, 2021) ("GFCL 2nd Supp. A&C Resp.-Pt. II"), Appx06703. Commerce's *Final Determination* is in accordance with law and based on substantial evidence.

### 1.   **Legal Standard**

Pursuant to 19 U.S.C. § 1677a(c)(2)(A), Commerce deducts movement expenses from the U.S. selling price to derive the constructed export price. Commerce "may consider allocated expenses and price adjustments when transaction-specific reporting is not feasible, provided . . . that the allocation method used does not cause inaccuracies or distortions." 19 C.F.R. § 351.401(g)(1). A party seeking to submit allocated expenses and price adjustments must demonstrate "that the allocation is calculated on as specific a basis as is feasible, and

4

must explain why the allocation methodology used does not cause inaccuracies or distortions." *Id.* § 351.401(g)(2). In determining the feasibility of transaction-specific reporting, Commerce must consider "the records maintained by the party in question in the ordinary course of its business." *Id.* § 351.401(g)(3).

In *SNR Roulements v. United States*, the Court made it clear that "Commerce has the authority to accept averages rather than transaction-specific data 'as long as the methodology chosen by a respondent is reasonable and supported by information contained in the administrative record.'" 341 F. Supp. 2d 1334, 1351 (Ct. Int'l Trade 2004) (quoting *Torrington Co. v. United States*, 965 F. Supp. 40, 45 (Ct. Int'l Trade 1997)). The Department has previously found, in a similar instance, that "reporting of certain U.S. movement expenses (*i.e.*, USBROKU, INTNFRU & INLFPWU) on warehouse sales on an allocated basis is reasonable based on {the respondent's} explanation that these expenses are not incurred and recorded in its accounting record at the time the sale is made to the unaffiliated U.S. customers." *Common Alloy Aluminum Sheet From Turkey*, 86 Fed. Reg. 13326 (Dep't of Commerce Mar. 8, 2021) (final affirm. LTFV determ.), and

accompanying Issues and Decision Memorandum at 25 (Comment 8) ("*CAAS IDM*").

### 2. GFCL's Allocation Methodology is Reasonable and Supported by Record Evidence

In GFCL's initial section C response, GFCL reported the unit cost of its moving expenses on an allocated basis for the following fields: DINLFTPU (domestic inland freight), INTNFRU (international freight), INSUREU (domestic inland insurance), INLFPWU (U.S. inland freight from port to warehouse), and USWAREHU (U.S. warehouse expenses). *See* GFCL Section C Questionnaire Response at C-27 – C-32, Exhs. C-14, C-17, C-27 – C-30, C-32, and C-36 (May 17, 2021) ("Sec. C Resp."), Appx03539-03544, Appx03616-03620, Appx03627-03628, Appx03662-03682, Appx03704-03711, Appx03731-03737; *see also*, GFCL Section B Questionnaire Response at Exh. B-11.1 (May 17, 2021) ("Sec. B Resp."), Appx03493-03494.

In Commerce's supplemental questionnaire, Commerce requested "a calculation worksheet" for "three U.S. sales" with "supporting documentation for DINLFTPU, INTNFRU, and INLFPWU, and tie these expenses to the revised U.S. sales database." Letter from R.

Trainer, Program Manager, Enforcement & Compliance, to J. Gurley, re: Section C Supplemental Questionnaire at Qu. 9 (June 11, 2021), Appx04140; *see also* GFCL First Supplemental Section C Questionnaire Response at 7 (July 9, 2021) ("1st Supp. C Resp."), Appx05087. Commerce's question continued, stating, "{a}lternatively, if you believe it is not feasible to report these movement expenses on a transaction-specific basis, explain why it is not feasible to do so, and why your reported allocation based on product type is appropriate." *Id.* Despite Plaintiff's arguments that GFCL "could have reported transaction-specific movement expenses," GFCL could not and Commerce provided GFCL the alternative reporting mechanism. Pl. Br. at 7-8.

The record belies Plaintiff's claims that GFCL did not provide Commerce an explanation for its reporting. In response to Commerce's questionnaire, GFCL explained that "{v}alues reported in DINLFTPU, INTNFRU, and INLFPWU {have} been incurred by GFCL India, GFCL India, and GFL Americas LLC, respectively, for sales made to GFL Americas LLC during the {period of investigation}. GFL Americas LLC stored inventory for these sales in a U.S. warehouse and then sold it to their customer based on the pending orders and availability of the stock

7

at warehouse." 1st Supp. C Resp. at 7, Appx05087. In most cases, "trading sales involve multiple purchases from GFL India, which are then stored in the U.S. Warehouse." *Id.* at 7-8, Appx05087-05088. Those sales "are made based on customer orders and GFL Americas LLC delivers to the customer from the inventory." *Id.* at 8, Appx05088. GFCL further explained that it is because of this sales process that "it is not feasible to establish a one-to-one correlation between purchases and sales." *Id.* As support, GFCL provided a screenshot of its SAP system showing the "Inland Freight – Plant/Warehouse to Customer and International Freight" for a specific invoice. *Id.* at Exh. SC-35, Appx05519-05520.

In a separate supplemental questionnaire, Commerce requested that GFCL provide sample calculations and supporting documentation for USWAREHU, demonstrating that the reported expenses tie to GFCL's financial records. *See* GFCL 2nd Supp. A&C Resp.-Pt. II, at 2, Appx06702. In response, GFCL gave specifics, stating that "merchandise are purchased by GFL Americas LLC from GFCL India, then stored in the Warehouse based on the sales order billed, and delivered to customers in the U.S.A. from inventory." *Id.* at 2-3,

8

**NON-CONFIDENTIAL**

Appx06702-06703. GFCL also explained again that in the normal course of business, no record would allow for a more specific reporting of the movement expenses for sales made out of the U.S. warehouses. As such, "{t}he procurement of goods and the sales of goods are in different lots sizes, various time periods, and numerous product types , . . . {and} it is not possible to establish a one-to-one correlation between warehousing expenses and sales." *Id.* at 3, Appx06703. GFCL thus reported on an allocation basis. That Plaintiff does not like *how* GFCL describes "transaction-specific reporting is not feasible," 19 C.F.R. § 351.401(g)(1), does not equate to "GFCL's refusal" to explain and is not grounds for remand.

Next, Plaintiff's repetition of its claim that GFCL can report on a transaction-specific basis is based on the speculation that [

]. Pl. Br. at 19-22. In fact, it cannot. As GFCL explained, sales of the goods shipped from GFCL's U.S. warehouses can be from various lots of different quantities, sizes, and product types. 1st Supp. C Resp. at 7-8, Appx05087-05088; and GFCL 2nd Supp. A&C

9

Resp.-Pt. II, at 2-3, Appx06702-06703. No record evidence suggests that the [



]; nor does the record show batch numbers are tracked and recorded in GFCL's normal books and records so as to establish the one-on-one linkage between the sales documents and the shipping documents.

Plaintiff relies on GFCL's submission of its "Export Customer Complaint Register" to counter "GFCL's professed inability to link merchandise shipped from India to its U.S. warehouse with merchandise sold to the U.S. customers." Pl. Br. at 19. Clear from the record, the "Export Customer Complaint Register" is a literal embodiment of its name: an excel document compilation of customer complaints and whether/how GFCL dealt with those complaints. There is nothing about this document which shows "that GFCL routinely tracks merchandise batch numbers" or that GFCL could feasibly "report{} movement expenses on a transaction-specific basis." Pl. Br. at 20-21. Indeed, GFCL took the time and effort to explicitly explain why it could not report movement expenses on a transaction-specific basis.

10

It is not unusual for Commerce to rely on a respondent's movement expenses reported on an allocated basis. Here, similar to the facts presented in *Common Alloy Aluminum Sheet From Turkey*, GFCL's "reporting of certain U.S. movement expenses" (*i.e.* DINLFTPU, INTNFRU, INSUREU, INLFPWU, and USWAREHU) "on warehouse sales on an allocated basis is reasonable" because "these expenses are not incurred and recorded in its accounting record at the time the sale is made to the unaffiliated U.S. customers." *CAAS IDM* at 25 (Comment 8). In *Common Alloy Aluminum Sheet From Turkey*, Commerce relied on the respondent's reporting that "as the subject merchandise goes into . . . inventory, no one-to-one linkage for these expenses exists because these expenses are incurred prior to the actual sale made to . . . unaffiliated U.S. customers." *Id.* In that case, there was also "a timing issue involved related to the fact that these expenses are incurred before the actual {unaffiliated} sale{;}" and there was an additional "issue of how much detail is electronically recorded in the accounting ledgers that capture these expenses and if such invoice-specific sales detail is captured in the service providers' invoices." *Id.* "Accordingly," Commerce had "no basis to conclude that calculating these U.S.

11

movement expenses on a transaction-specific basis could be completed without an overly burdensome manual review of documents." *Id.* As described above, GFCL also experiences timing lags between when inventory goes to the warehouse and when sales are made; GFL Americas LLC delivers to the customer from inventory; and GFCL's recording system does not include a more specific reporting of movement expenses.

Commerce's *Final Determination* was thus based on substantial evidence and in accordance with law.

### 3. Commerce's Decision to Not Recalculate GFCL's Reported Movement Expenses on an Overall Average Basis is Based on Substantial Evidence

As described above, GFCL properly reported its movement expenses on an allocation-basis. Plaintiff's proposed methodology is contrary to the statute and Commerce's regulation which requires that Commerce's calculation consider the records maintained in the respondent's normal books. Requesting that GFCL trace moving expenses at the batch number level would not result in a transaction-specific allocation but, rather, would introduce a distorted batch-number specific allocation inconsistent with GFCL's record-keeping

12

practices.

By way of example, in Commerce's previous investigation of PTFE Resin from India, GFCL did attempt to extract and report warehousing expenses on the transaction, product-specific basis, and could only derive an extremely complicated and inaccurate calculation. The calculation derived by GFCL in the previous investigation of PTFE resin from India was so complicated it could not be replicated, leading to larger issues for Commerce and GFCL at verification. *See Polytetrafluoroethylene Resin From India*, 83 Fed. Reg. 48594 (Dep't of Commerce Sept. 26, 2018) (final affirm. LTFV determ.), and accompanying Issues and Decision Memorandum at 7-8 (Comment 2) (determining that facts available was warranted because "Commerce was unable to verify the U.S. warehousing expenses reported in GFL's sales data," when GFL did not initially report its warehouse expense ratio based on an allocation methodology. *Id.* at 8.).

Not only did GFCL demonstrate that its reporting on an allocated basis was based on substantial evidence, lawful, and not distortive, GFCL also demonstrated that reporting on an aggregate basis would be unnecessarily distortive.

**B.    Application Of Partial AFA Or Recalculating GFCL's Reported Movement Expenses Based On Facts Available Is Unwarranted**

An application of partial adverse facts available or recalculation of GFCL's movement expenses based on facts available is unwarranted. Plaintiff argues that GFCL's reporting of its movement expenses is lacking and that "{r}eporting these movement expenses on a transaction-specific basis may have required GFCL to expend additional time and energy, but that is precisely what the 'maximum efforts' standard contemplates." Pl. Br. at 30. As discussed above, the statement is false. GFCL has complied with Commerce's requests to the best of its ability, providing responses in the form and manner requested. Plaintiff's arguments to the contrary – that Commerce "ignored" certain record evidence and that "GFCL fail{ed} to meet the statutory standard" – simply amount to a disagreement regarding Commerce's review of the facts. *See id.* at 24-25.

In short, there are no facts missing from the record for Commerce to lawfully apply any other facts available, never mind those with an adverse inference.

### 1.   Legal Standard

For Commerce to apply facts available or facts available with an adverse inference, it must find that there are facts missing from the record to "fill" with facts available *and*, if applying an adverse inference, must determine that GFCL did not cooperate to the best of its ability to provide those facts. *See* 19 U.S.C. §§ 1677e(a) – (b); *Nat'l Nail Corp. v. United States*, 390 F. Supp. 3d 1356, 1372 (Ct. Int'l Trade 2019) ("{T}he idea was that facts available would be used to fill gaps where some information was not on the record."); *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1381 (Fed. Cir. 2003) ("As a separate matter, subsection (b) permits Commerce to use an inference that is adverse to the interests of { a respondent} in selecting from among the facts otherwise available, only if Commerce makes the separate determination that the respondent has failed to cooperate by not acting to the best of its ability to comply.") (internal quotations omitted) (citation omitted). "Before Commerce may use facts available, however, it must comply with the notice and remedial requirements of § 1677m(d)." *Hyundai Steel Co. v. United States*, 518 F. Supp. 3d 1309, 1322 (Ct. Int'l Trade 2021). Although the "burden of creating the

15

administrative record lies with the interested parties; through questionnaires, *Commerce asks for the information that it deems necessary to make its margin determinations.*" *Id.* at 1321 (citing *BMW of N. Am. LLC v. United States*, 926 F.3d 1291, 1295 (Fed. Cir. 2019)) (emphasis added).

### 2. Neither the Law Nor Record Evidence Support an Application of Facts Available or Facts Available with an Adverse Inference

Application of partial adverse facts available ("AFA") or recalculation of the moving expenses based on facts available is unwarranted. Plaintiff's arguments regarding whether GFCL acted to the best of its ability are at best based on a skewed review of the record. At worst, Plaintiff's arguments are disingenuous. As explained above and in Defendant's Brief, *see* Def. Br. at 16-35, 40-42, GFCL reported its movement expenses in the form and manner requested by Commerce, and to the best of its ability. There is no "gap" in the record for Commerce to fill with alternative facts and there is nothing in the record demonstrating such "gap," as claimed by Plaintiff. GFCL responded timely to Commerce at the height of the COVID-19 pandemic, when COVID-19 cases were spiking in India, when GFCL

16

personnel and their families were ill, and when vaccines were slow to roll out. *See, e.g.* Letter from Arent Fox LLP to Sec. Raimondo: GFCL's Request for Extension of Time to Respond to Sections B-E & Appendix V of the Questionnaire (Apr. 26, 2021), Appx. 09325-09374. GFCL cooperated fully with Commerce and to the best of its ability.

The cases cited by Plaintiff are inapplicable here. Commerce was not "*obligated* to reject expenses on an allocated basis." Pl. Br. at 39 (emphasis added). Plaintiff cites to *NSK Ltd. v. United States* to support its position that in this case, Commerce should have rejected GFCL's reporting. *Id.* In *NSK*, the respondent both "failed to justify its use of sales value as an allocation methodology" and "refused to provide" related specific information requested by Commerce. *NSK Ltd. v. United States*, 346 F. Supp. 2d 1312, 1340 (Ct. Int'l Trade 2004), *aff'd,* 481 F.3d 1355 (Fed. Cir. 2007). Neither scenario is true here – Commerce reasonably allowed for and accepted GFCL's alternative reporting, and Commerce never requested additional specific information. Again, *nothing* is missing from the record. *See* 19 U.S.C. § 1677e(a) (requiring that "necessary information is not available on the record" before Commerce can "use the facts otherwise available in

17

reaching" its determination). Contrary to Plaintiff's assertions, an application of facts available and, certainly, facts available with adverse inferences is more complicated. *See* Pl. Br. at 35 (arguing that Commerce's determination is conclusory). Commerce cannot simply determine that a respondent has not cooperated. This Court has sustained Commerce's determinations to apply facts available with adverse inferences when the respondent "withheld information from Commerce twice (in the original and supplemental questionnaires) *and* failed to act to the best of its ability to explain fully how its allocation methodology based on sales value was not distortive." *NSK*, 346 F. Supp. 2d at 1340 (emphasis added). That scenario does not exist in the record of this case.

Here, Commerce did not determine that GFCL withheld information. GFCL did not "simply refuse{} to expend the same efforts for Commerce that it routinely expends for its own customers." Pl. Br. at 24. Rather, GFCL provided its responses in the most accurate way it could – based on its own reporting methodology – and in response to Commerce's option to report in the alternative. *See* 19 C.F.R. § 351.401(g)(3) (regarding "feasibility of transaction-specific reporting"

18

and that Commerce takes "into account the records maintained by the party in question"); *see also SNR Roulements,* 341 F. Supp. 2d at 1351 (explaining with respect to the regulation governing deduction of moving expenses that "{n}othing suggests that companies are required to make wholesale changes to their record-keeping practices to comply with § 351.401(g)(1)."). GFCL responded to Commerce's questions in the form and manner requested and to the best of its ability. Attempting to provide information that GFCL does not track only *introduces* distortions to Commerce's margin calculations.

Plaintiff's description of GFCL's argument at the administrative level as "because transaction-specific expenses were not tracked in the ordinary course, Commerce was not permitted to require them," Pl. Br. at 38, is also not true. Specifically, GFCL stated that reporting as Plaintiff requests would "introduce a distorted batch-number specific allocation inconsistent with GFCL's record-keeping practices" and Plaintiff's "proposed methodology is, therefore, contrary to the statute and the Department's regulation that requires the calculation be based on record maintained in normal books and record." GFCL's Rebuttal Brief at 7 (Nov. 19, 2021) ("GFCL Rebuttal Br."), Appx08689.

19

Commerce's regulations permit it to "consider allocated expenses and price adjustments when transaction-specific reporting is not feasible" and, when determining "feasibility of transaction-specific reporting or whether an allocation is calculated on as specific a basis as is feasible," Commerce "will take into account the records maintained by the party in question in the ordinary course of its business." 19 C.F.R. §§ 351.401(g)(1), (3). This is precisely what Commerce did.

Commerce did not "excuse{} GFCL from reporting transaction-specific data." Pl. Br. at 27-28. Instead, Commerce allowed GFCL to report movement expenses by alternative means, as permitted by its regulations. *See* 19 C.F.R. § 351.401(g)(1); *see also Granular Polytetrafluoroethylene Resin From India*, 86 Fed. Reg. 49299 (Dep't Commerce Sept. 2, 2021) (prelim. affirm. LTFV determ.), and accompanying Decision Memorandum at 7 ("*PDM*"), Appx01039; *IDM* at 6-7 (Comment 1), Appx01060-01061.

## C.   Commerce's Determination To Grant GFCL A CEP Offset Is Based On Substantial Evidence And In Accordance With Law

In Commerce's *Final Determination*, Commerce granted a CEP offset to GFCL, determining that the information provided by GFCL

was "sufficient for purposes of this segment of the proceeding." *IDM* at 10 (Comment 2), Appx01064. Commerce determined that the "detailed qualitative analysis, *i.e.*, thorough descriptions and support documentation, in support of the levels of intensity {} reported in the selling functions chart" supported granting a CEP offset. *Id.* at 9, Appx01063. Although in its *Final Determination* Commerce determined that the record contained "inadequate" quantitative analysis, Commerce "did not inform GFCL that it required more information." *Id.* at 9-10, Appx01063-01064.

There is substantial evidence on the record – qualitative and quantitative – to support a CEP offset for GFCL. Contrary to Plaintiff's claims, GFCL has demonstrated on the record "'substantial' differences in selling activities between the home and U.S. markets." Pl. Br. at 44. Even if the Court determines that there was inadequate quantitative evidence on the record, Commerce's *Final Determination* should be sustained because Commerce did not notify GFCL of any quantitative deficiencies on the record and the remainder of the record satisfied the legal requirements for a CEP offset.

## 1.    Legal Standard

The statute provides that:

> When normal value is established at a level of trade which constitutes a more advanced stage of distribution than the level of trade of the constructed export price, but the data available do not provide an appropriate basis to determine under subparagraph (A)(ii) a level of trade adjustment, normal value shall be reduced by the amount of indirect selling expenses incurred in the country in which normal value is determined on sales of the foreign like product but not more than the amount of such expenses for which a deduction is made under section 1677a(d)(1)(D) of this title.

19 U.S.C. § 1677b(a)(7)(B). Commerce's regulations provide that

Commerce "*will* grant a constructed export price offset" when "{n}ormal

value is compared to constructed export price;" "{n}ormal value is

determined at a more advanced level of trade than the level of trade of

the constructed export price; and{,}" for cooperating respondents, "the

data available do not provide an appropriate basis to determine" that a

"difference in level of trade affects price comparability." 19 C.F.R.

§ 351.412(f).

Thus, the statute and the Department's regulation set forth

separate criteria in determining whether to grant a level of trade

22

adjustment or CEP offset. *See* 19 U.S.C. §§ 1677b(a)(7)(A) (level of trade) and 1677b(a)(7)(B) (CEP offset); 19 C.F.R. §§ 351.412(d) (level of trade) and 351.412(f) (CEP offset). Neither "require{s} that the respondent submit a quantitative analysis to demonstrate it is entitled to a CEP offset." Def. Br. at 46; *see also* 19 U.S.C. § 1677b(a)(7)(B); 19 C.F.R. § 351.412(f).

Although Commerce has in the past "required respondents to provide both qualitative and quantitative analyses to enhance its ability to determine whether reported differences in selling functions are substantial enough" to grant a CEP offset, Def. Br. at 46, Commerce also reviews each record independently. *See Qingdao Sea-Line Trading Co. v. United States*, 766 F.3d 1378, 1387 (Fed. Cir. 2014) ("Indeed, the Trade Court has recognized that each administrative review is a separate exercise of Commerce's authority that allows for different conclusions based on different facts in the record."); *Jiaxing Brother Fastener Co. v. United States*, 428 F. Supp. 3d 1364, 1379 n.29 (Ct. Int'l Trade 2020) ("Each of Commerce's proceedings are treated as independent proceedings with separate records and which lead to independent determinations.") (citation omitted) (internal quotations

23

omitted). Here, Commerce has presented a reasoned explanation for its determination, which connects the record evidence to its determination. *See Bowman Transp., Inc. v. Ark-Best Freight System, Inc.,* 419 U.S. 281, 285 (1974) (Agencies have a duty to "articulate a rational connection between the facts found and the choice made.") (citation omitted) (internal quotations omitted).

Respondent's burden is to "demonstrate the appropriateness of such adjustment." *Statement of Administrative Action accompanying the Uruguay Round Agreements Act* ("SAA"), H.R. Rep. No. 103–316, Vol. 1, at 829 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4168; Pl. Br. at 43. GFCL has built a record demonstrating a CEP offset is appropriate. It is Commerce's duty to apply the law (statute and regulations) to the facts of a particular case. Commerce has done just that in this case.

### 2.   GFCL Properly Built the Record for Commerce to Grant a CEP Offset

GFCL has clearly demonstrated its entitlement to the CEP offset because (1) GFCL has CEP sales and normal value is being compared to the constructed export price; (2) normal value is determined at a more advanced level of trade than the level of trade of the constructed export

24

price; and (3) because there are no CEP sales in the home market, there is no data on whether a difference in level of trade affects price comparability.

In its *Preliminary Determination*, Commerce correctly determined that the home market level of trade is at a more advanced stage of distribution than either the export price ("EP") or CEP levels of trade and, because the record does not provide an appropriate basis for determining a level of trade adjustment, Commerce granted a CEP offset pursuant to 19 U.S.C. § 1677b(a)(7)(B) and 19 C.F.R. 351.412(f). *PDM* at 9-11, Appx01041-01043. There are clear and substantial differences in the selling activities between the home market and the U.S. market. *See* GFCL's Section A Questionnaire Response at A-20 – A-23 and Exh. A-11 (Apr. 26, 2021) ("Sec. A Resp."), Appx01906-01908, Appx02101-02104. The information provided by GFCL shows that all home market sales are at the same level of trade, all EP sales are at the same level of trade, and all CEP sales are at the same level of trade. *Id.* at Exh. A-11, Appx02101-02104. Commerce properly "continued to grant GFCL a CEP offset" in the final determination. *IDM* at 9 (Comment 2), Appx01063.

GFCL puts considerable resources into processing sales for its home market and EP sales which involves coordinating functions between various departments including: production, logistics, and sales and marketing to ensure that the merchandise is produced and shipped based on agreed terms between GFCL and the customers. In contrast, for its CEP sales, GFCL only ensures the merchandise is delivered to GFL Americas LLC whereas then GFL Americas LLC ensures the merchandise is delivered to the customer at the agreed upon terms and satisfaction. Sec. A Resp. at Exh. A-11, Appx02101-02104.

Not all selling functions carry the same weight. *Corus Eng'g Steels Ltd. v. United States*, 27 CIT 1286, 1292 (2003) (describing Commerce's review of reported selling functions). Commerce's practice is to examine not only the number of selling functions "undertaken outside the U.S. for the U.S. and comparison markets but also their weight and intensity." *Id.* The Court has recognized that there "may be circumstances where the significance of one or two indirect selling functions outweighs the significance of the rest." *Id.* As the Department properly found in the *Preliminary Determination*, logistical services and sales related administrative activities are performed for EP sales but

26

are never performed for three of the four CEP sales channels. *PDM* at

10, Appx01042. For selling activities (*i.e.* "sales support, training

services, logistical services, and sales related administrative activities"),

GFCL has a high level of intensity for its home market sales whereas

the majority of the CEP sales channels had no selling activities

performed at all. *Id*. For sales support and training services, activities

were performed at a much higher intensity for home market sales

compared with CEP sales. *Id*. GFCL provided detailed descriptions, as

well as ample supporting documentation including where the expenses

are captured in accordance with the Department's requests. Sec. A

Resp. at Exh. A-11, Appx02101-02104; *see also* GFCL's First

Supplemental Section A Questionnaire Response at Exhs. SA-3 and SA-

7 (May 24, 2021) ("1st Supp. A Resp."), Appx03912-03919, Appx04040-

04043.

Overall, "Commerce evaluates differences in levels of trade based

on a seller's entire marketing process." Sec. A Resp. at A-16,

Appx01902. With respect to a "quantitative" analysis, in its initial

questionnaire, Commerce requested "a quantitative analysis showing

how the expenses assigned to POI/POR sales made at different claimed

levels of trade impact price comparability." *Id.* at A-24, Appx01910
(footnote omitted). GFCL directed Commerce to its description of its
sales activities, *id.* at A-19- A-20, Appx01905-01906, and explained that
the "significant variation in the level of trade between U.S. sales and
Home Market sales" could be "quantified when comparing the expenses
assigned to sales associated with each level of trade." *Id.* at A-24,
Appx01910.

GFCL provided an "explanation of how the quantitative analysis
provided . . . supported its claimed levels of intensity for the reported
selling activities." *Polyethylene Terephthalate Sheet from the Republic of
Korea*, 85 Fed. Reg. 44276 (Dep't Commerce July 22, 2020) (final LTFV
determ.), and accompanying Issues and Decision Memorandum at 19
(Comment 4); *see also* Pl. Br. at 44-45. For example, GFCL described in
detail how it determined the intensity of each selling function
performed in the Home Market and U.S. Market. *See* GFCL Supp. A
Resp. at 2 and Exh. SA-7, Appx03881, Appx04040-04043. GFCL did so
by providing evidence such as correspondence with customers, its
different warehouse agreements (which only apply for U.S. sales), and
provided sales documents for each channel of trade. *See* Sec. A Resp. at

Exhs. A-11, A-12, and A-13 (providing the channel of distribution and selling functions chart, a sales process chart, and sales documents for the home market and U.S. market), Appx02101-02282. GFCL quantified these differences in its selling functions chart by ranking each function by level of intensity and provided the amounts of related expenses in the Section B and Section C responses. *See, e.g.* Sec. C Resp. at Exhs. C-17 – C-30, Appx03627-03682 (providing certain warehouse expenses). Commerce did not indicate that GFCL's responses were insufficient with respect to a quantitative analysis and was obligated to provide GFCL the opportunity to cure such a deficiency. *See* 19 U.S.C. § 1677m(d) (providing that Commerce much provide a party with "an opportunity to remedy or explain the deficiency"); *Hyundai,* 518 F. Supp. 3d at 1322 (requiring that Commerce promptly inform parties of deficiencies and provide an opportunity to fix or explain the deficiencies).

Nevertheless, Commerce reasonably based its *Final Determination* on the record at hand, recognizing that it did not give GFCL an opportunity to remedy its alleged deficiency in its initial questionnaire response.

29

## III.   CONCLUSION

For the reasons described above and in Defendant's Response Brief, we respectfully request that the Court sustain Commerce's final determination.

Respectfully submitted,

**/s/ Jessica R. DiPietro**
Jessica R. DiPietro
Matthew M. Nolan
John M. Gurley

ArentFox Schiff LLP
1717 K Street, NW
Washington, DC  20006
Tel: (202) 857-6301

January 13, 2023                  *Counsel for Gujarat Fluorochemicals Limited*

30

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to the Court's Standard Chamber Procedure 2(b)(1), the

undersigned certifies that Defendant-Intervenor's Response Brief filed

on January 13, 2023, complies with the word limitation requirement.

The word count for Defendant-Intervenor's Response Brief, as computed

by ArentFox Schiff LLP's word processing system is 5280.


 <u>**/s/ Jessica R. DiPietro**</u>
Jessica R. DiPietro