# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

| | | |
|---|---|---|
| DAIKIN AMERICA, INC., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| *Defendant*, | ) | Court No. 22-00122 |
| | ) | |
| and | ) | |
| | ) | |
| GUJARAT FLUOROCHEMICALS | ) | |
| LIMITED, | ) | |
| | ) | |
| *Defendant-Intervenor*. | ) | |

## **PROPOSED ORDER**

Upon consideration of the Final Results of Redetermination

Pursuant to Court Remand (Remand Redetermination) filed on July 12,

2024 by the U.S. Department of Commerce, the parties' comments, and,

the responses thereto, and other pertinent papers, it is hereby

ORDERED that the Department of Commerce's Remand

Redetermination is affirmed in all respects; and it is further

ORDERED that judgment is entered in favor of the United States.

**SO ORDERED.**

_____
JUDGE

Dated: _____, 2024
        New York, NY

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE**

| | |
|---|---|
| DAIKIN AMERICA, INC., | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES, | ) |
| | ) |
| *Defendant,* | ) Court No. 22-00122 |
| | ) |
| and | ) **PUBLIC VERSION** |
| | ) |
| GUJARAT FLUOROCHEMICALS | ) Business Proprietary |
| | ) Information (BPI) Denoted |
| LIMITED, | ) By Brackets [ ] on Pages i, 17, |
| | ) 18, 22-25, 27-31 32, 34-37, 39. |
| *Defendant-Intervenor.* | ) |

**DEFENDANT'S CONFIDENTIAL RESPONSE TO COMMENTS**
**ON THE REMAND REDETERMINATION**

Of Counsel:

LESLIE M. LEWIS
Attorney
Department of Commerce
Office of Chief Counsel for Trade
Enforcement & Compliance
1401 Constitution Avenue, NW
Washington, DC 20005

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

PATRICIA M. McCARTHY
Director

CLAUDIA BURKE
Deputy Director

COLLIN MATHIAS
Trial Attorney
Commercial Litigation Branch
U.S. Department of Justice

PUBLIC VERSION

Civil Division
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-0315
Email: collin.t.mathias@usdoj.gov

November 1, 2024                    *Attorneys for Defendant*

PUBLIC VERSION

# **TABLE OF CONTENTS**

ARGUMENT ........................................................................... 3

I.   Standard Of Review................................................. 3

II.  Commerce's Decision Not To Grant GFCL A CEP Offset
     Complies With The Remand Order And Is Supported By
     Substantial Evidence.............................................. 3

     A. Legal Framework ............................................... 4

     B. GFCL Failed To Provide Sufficient Evidence To
        Demonstrate Entitlement To A CEP Offset...................... 7

III. The Court Should Sustain Commerce's Determination To
     Continue To Rely On GFCL's Allocated Movement
     Expenses Based On Its Finding That It Was Not Feasible
     For GFCL To Report Transaction-Specific Movement Expenses
     ................................................................ 16

     A. Commerce Reasonably Determined That It Was Not
        Feasible For GFCL To Report Certain Movement
        Expenses On A Transaction-Specific Basis .................... 18

        1. Substantial Record Evidence Supports Commerce's
           Finding That The Export Customer Complaint
           Register Does Not Track Merchandise

                                                          ].. 22

        2. Commerce Reasonably Considered Feasibility............ 30

        3. Commerce Reasonably Found There Is No Record
           Indication Of How Batch Numbers Are Associated
           With Specific Shipments Or Sales ....................... 34

     B. Commerce Reasonably Accepted GFCL's Allocation
        Methodology For U.S. Movement Expenses...................... 37

PUBLIC VERSION

CONCLUSION ....................................................................................... 41

PUBLIC VERSION

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                      **Page(s)**

*Ad Hoc Shrimp Trade Action Comm. V. United States,*
    616 F. Supp. 2d 1354 (Ct. Int'l Trade 2009) ..........................................7

*Ad Hoc Shrimp Trade Action Comm. v. United States,*
    802 F.3d 1339 (Fed. Cir. 2015)..............................................................40

*Allentown Mack Sales and Service, Inc. v. N.L.R.B.,*
    522 U.S. 359 (1998) ...............................................................................30

*Cleo Inc. v. United States,*
    501 F.3d 1291 (Fed. Cir. 2007)..............................................................27

*Consolo v. Fed. Mar. Comm'n,*
    383 U.S. 607 (1966) ...............................................................................40

*Daikin America, Inc. v. United States,*
    Court No. 22-00122, Slip Op. 24-32 (Ct. Int'l Trade March 14, 2024)..2

*Koyo Seiko Co. v. United States,*
    551 F.3d 1286 (Fed. Cir. 2009)..............................................................38

*MacLean-Fogg Co. v. United States,*
    100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ..........................................3

*Nippon Steel Corp. v. United States,*
    337 F.3d 1373 (Fed. Cir. 2003)..............................................................34

*Pakfood Pub. Co. v. United States,*
    724 F. Supp. 2d 1327 (Ct. Int'l Trade 2010) ..........................................7

*QVD Food Co. v. United States,*
    658 F.3d 1318 (Fed. Cir. 2011)........................................................7, 15

PUBLIC VERSION

*SeAH Steel Corp. v. United States,*
    659 F. Supp. 3d 1318 (Ct. Int'l Trade 2023) ........................................ 16

*SKF USA Inc., v. United States,*
    800 F. Supp. 2d 1316 (Ct. Int'l Trade 2011) ................................. 38, 39

*SNR Roulements v. United States,*
    341 F. Supp. 2d 1334 (Ct. Int'l Trade 2004) ...................................... 32

*Yama Ribbons & Bows Co. v. United States,*
    865 F. Supp. 2d 1294 (Ct. Int'l Trade 2012) ...................................... 12

## Statutes

19 U.S.C. § 1516a(b) ....................................................................................3

19 U.S.C. § 1677b(a) ....................................................................................4

## Regulations

19 C.F.R. § 351.401(b) ................................................................. 7, 13, 15

19 C.F.R. § 351.401(g) ................................................................. *passim*

19 C.F.R. § 351.402(g) ................................................................. 19, 31, 32

19 C.F.R. § 351.412(c) ................................................................................5

19 C.F.R. § 351.412(f) ................................................................................4

## Administrative Determinations

*4th Tier Cigarettes from the Republic of Korea: Final Affirmative*
    *Determination of Sales at Less Than Fair Value and Negative*

iv

*Determination of Critical Circumstances,*
85 Fed. Reg. 79,994 (Dep't of Commerce Dec. 11, 2020) ...................... 6

*Emulsion Styrene-Butadiene Rubber from Brazil: Final Results of Antidumping Duty Administrative Review*; 2017-2018,
85 Fed. Reg. 38,847 (Dep't of Commerce June 29, 2020) ..................... 6

*Granular Polytetrafluoroethylene Resin from India: Final Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances,*
87 Fed. Reg. 3,772 (Dep't Commerce January 25, 2022)...................... 2

*Polytetrafluoroethylene Resin from India,*
83 Fed. Reg. 48594 (September 26, 2018) .................................... 33, 34

*Polyethylene Terephthalate Sheet from the Republic of Korea: Final Determination of Sales at Less Than Fair Value,*
85 Fed. Reg. 44,276 (Dep't of Commerce July 22, 2020) .................. 5, 7

PUBLIC VERSION

# GLOSSARY OF ACRONYMS AND ABBREVIATIONS

| | |
|---|---|
| AFA | Adverse Facts Available |
| CEP | Constructed Export Price |
| Commerce | Department of Commerce |
| Daikin | Daikin America, Inc. (Plaintiff) |
| GFL Americas | Gujarat Fluorochemicals Americas LLC |
| GFCL | Gujarat Fluorochemicals Limited (Defendant-Intervenor) |
| IDM | Issues and Decision Memorandum |
| LOT | Level of Trade |
| ICQR | Initial Section C Questionnaire Response |
| PDM | Preliminary Decision Memorandum |
| POI | Period of Investigation |
| PTFE | Polytetrafluorethylene |
| SAQ | Supplemental Section A Questionnaire |
| SAQR | Supplemental Section A Questionnaire Response |
| SCQ | Supplemental Section C Questionnaire |
| SCQR | Supplemental Section C Questionnaire Response |
| SSCQR | Second Supplemental Section C Questionnaire Response |

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE**

| | | |
|---|---|---|
| DAIKIN AMERICA, INC., | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| *Defendant,* | ) | Court No. 22-00122 |
| | ) | |
| and | ) | **PUBLIC VERSION** |
| | ) | |
| GUJARAT FLUOROCHEMICALS | ) | Business Proprietary |
| | ) | Information (BPI) Denoted |
| LIMITED, | ) | By Brackets [ ] on Pages i, 17, |
| | ) | 18, 22-25, 27-31 32, 34-37, 39. |
| *Defendant-Intervenor.* | ) | |

**DEFENDANT'S CONFIDENTIAL RESPONSE TO COMMENTS
ON THE REMAND REDETERMINATION**

Defendant, the United States, respectfully submits this response

to the comments filed by plaintiff, Daikin America, Inc., and defendant-

intervenor, Gujarat Fluorochemicals Limited (GFCL) concerning the

U.S. Department of Commerce's (Commerce) remand redetermination.

*See* Final Results of Redetermination Pursuant to Court Remand, ECF

Nos. 50, 51, (July 12, 2024) (Remand Results).  Commerce's remand

redetermination follows Commerce's final determination in the

PUBLIC VERSION

antidumping duty investigation of granular polytetrafluorethylene (PTFE) resin from India, covering the period of January 1, 2020 through December 31, 2020. *See Granular Polytetrafluoroethylene Resin from India: Final Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances*, 87 Fed. Reg. 3,772 (Dep't Commerce January 25, 2022) (final determination) (P.R. 139) (Appx01076–78) and accompanying Issues and Decision Memorandum (P.R. 136) (Appx01055–75).

The Court's March 14, 2024 opinion and order remanded Commerce's decision to rely on GFCL's reported allocated movement expenses and to grant GFCL a constructed export price (CEP) offset. *Daikin America, Inc. v. United States*, Court No. 22-00122, Slip Op. 24-32 (Ct. Int'l Trade March 14, 2024) (Remand Order). In the remand results, Commerce continued to rely on GFCL's allocated movement expenses and concluded that GFCL did not demonstrate its eligibility for the CEP offset. Remand Results, ECF Nos. 50, 51 (July 12, 2024) (Appx08953-08986). Because Commerce has fully complied with the Court's order, and the remand redetermination is supported by

substantial evidence and otherwise lawful, we respectfully request that the Court sustain the remand redetermination.

## ARGUMENT

## I.    Standard Of Review

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order," and are "supported by substantial evidence, and are otherwise in accordance with law." *MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).

## II.    Commerce's Decision Not To Grant GFCL A CEP Offset Complies With The Remand Order And Is Supported By Substantial Evidence

In its Remand Order, the Court held that, based on Commerce's reasoning, there was not substantial evidence "that {GFCL} qualified for the offset" and remanded the matter to the agency's reconsideration. Remand Order at 10.  In light of the Court's Remand Order, Commerce determined not to grant GFCL the CEP offset.  Remand Results at 18 (Appx08970).  Although GFCL was given the opportunity in the investigation to do so, the company did not demonstrate its eligibility

for the CEP offset.  Remand Results at 1-2, 17 (Appx08953-56, Appx08969).

Now, GFCL argues that Commerce improperly denied the CEP offset because, GFCL claims, the evidentiary record supports granting the adjustment.  GFCL's Comments at 3-5, ECF No. 57 (Sept. 9, 2024). GFCL is incorrect.  Commerce's determination not to grant the CEP offset is in compliance with the Remand Order and is supported by substantial evidence.

## A.    **Legal Framework**

Commerce adjusts normal value in the form of a CEP offset if the home market level of trade (LOT) is at a more advanced stage than the CEP LOT, and there is insufficient record information to determine the effect of this difference on price comparability (*i.e.*, there is not an appropriate basis to grant a LOT adjustment under 19 U.S.C. § 1677b(a)(7)(A)).  19 C.F.R. § 351.412(f); 19 U.S.C. § 1677b(a)(7)(B); PDM at 9 (Appx01041).  Commerce's regulations specify that:

> {Commerce} will determine that sales are made at different levels of trade if they are made at different marketing stages (or their equivalent).  Substantial differences in selling activities are a necessary, but not sufficient, condition for determining that there is a difference in the stage of marketing.

19 C.F.R. § 351.412(c)(2).

To determine whether the comparison foreign-market sales are at different stages in the marketing process than the U.S. sales, Commerce examines the distribution system in each market, *i.e.*, the chain of distribution, including selling functions and class of customer, and the level of selling expenses for each type of sale.

Commerce requires that respondents requesting a CEP offset provide both qualitative and quantitative analysis for Commerce to evaluate whether reported differences in selling functions are substantial enough to warrant a finding that sales were made at different LOTs. Remand Results at 13 (Appx08965) (citing *e.g.*, *Polyethylene Terephthalate Sheet from the Republic of Korea: Final Determination of Sales at Less Than Fair Value*, 85 Fed. Reg. 44,276 (Dep't of Commerce July 22, 2020) (*Polyethylene Terephthalate Sheet from Korea*), and accompanying IDM at Comment 4). Commerce requires a quantitative analysis to support any claimed differences in channel-specific selling functions and corresponding levels of intensity, demonstrating that differences in the expenses incurred in each sales

channel impact price comparability.[1] *Id.* at 13, 17 (Appx08965,

Appx08969) (citations omitted); *see also e.g., 4th Tier Cigarettes from the*

*Republic of Korea: Final Affirmative Determination of Sales at Less*

*Than Fair Value and Negative Determination of Critical Circumstances*,

85 Fed. Reg. 79,994 (Dep't of Commerce Dec. 11, 2020), and

accompanying IDM at 34.  Commerce examines quantitative

information linked to each reported selling function, as well as how

indirect selling expenses support the claimed differences in selling

functions. Remand Results at 13, 17 (Appx08965, Appx08969) (citing

*Emulsion Styrene-Butadiene Rubber from Brazil: Final Results of*

*Antidumping Duty Administrative Review*; 2017-2018, 85 Fed. Reg.

38,847 (Dep't of Commerce June 29, 2020) (*Rubber from Brazil*), and

accompanying IDM at Comment 1).  Commerce requires quantitative

information and analysis in order to support a respondent's qualitative

analysis of the various selling functions and the purported differences

---

[1] Qualitative evidence includes "narrative descriptions of differences in selling functions, customer correspondence, sample sales records, meeting presentations and the like."  *See Rubber from Brazil* IDM at Comment 1; *see also* Initial AD Questionnaire at A-7 (Appx09159).

between claimed LOTs. *Polyethylene Terephthalate Sheet from Korea,*
85 Fed. Reg. 44,276, and accompanying IDM at Comment 4.

It is the respondent's burden to demonstrate eligibility for a CEP
offset. *See Ad Hoc Shrimp Trade Action Comm. v. United States*, 616 F.
Supp. 2d 1354, 1374 (Ct. Int'l Trade 2009) ("{I}t is the responsibility of
the respondent requesting the CEP offset to procure and present the
relevant evidence to Commerce."); *Pakfood Pub. Co. v. United States*,
724 F. Supp. 2d 1327 (Ct. Int'l Trade 2010) ("{T}o show entitlement to a
CEP offset, '{a} respondent must first demonstrate that substantial
differences in selling functions exist'."); *QVD Food Co. v. United States*,
658 F.3d 1318, 1324 (Fed. Cir. 2011) ("The burden of creating an
adequate record lies with interested parties."); 19 C.F.R. § 351.401(b)(1)
("The interested party that is in possession of the relevant information
has the burden of establishing to the satisfaction of the Secretary the
amount and nature of a particular adjustment{.}").

## B.   GFCL Failed To Provide Sufficient Evidence To Demonstrate Entitlement To A CEP Offset

As outlined in the Remand Results, GFCL did not satisfy its
burden. Remand Results at 12-18, 29-33 (Appx08964-70, Appx08981-
08985). Commerce determined that GFCL failed to provide a

PUBLIC VERSION

quantitative analysis based on verifiable financial data and documentation, *e.g.*, selling expense information, *etc.*, to support the claimed levels of intensity for the selling activities reported in its selling functions chart. *Id.* at 30 (Appx08982); *see also id.* 17-18, 31-33 (Appx08969-70, Appx08983-85). As a result, Commerce was unable to evaluate the reported differences in selling functions and whether they are substantial enough to warrant a finding that home market and U.S. sales were made at different LOTs. *Id.* at 33 (Appx08985).

In the investigation, Commerce requested that GFCL provide Commerce with the qualitative and quantitative information necessary to evaluate whether a CEP offset should be granted, *i.e.*, whether there are substantial differences in selling activities between the home market LOT and CEP LOT. Remand Results at 30 (Appx08982) (listing specific information and document requests) (citing Commerce Letter, "Initial AD Questionnaire," dated March 26, 2021 at A-7-A-8 (Initial AD Questionnaire) (P.R. 38) (Appx09159-09312)). Specifically, Commerce requested:

1) documentation demonstrating the performance of each selling activity during the POI;

2) an explanation of how the documentation supports a
claim that each reported activity was performed;

3) a discussion regarding how the activity is relevant to the
LOT analysis;

4) a demonstration of how indirect selling expenses vary by
the different LOTs claimed; *and*

5) an explanation of how the quantitative analysis supported
the claimed levels of intensity for the selling functions
reported in the selling functions chart.

Initial AD Questionnaire at A-7-A-8 (Appx09159-09312).  However,

GFCL failed to provide documentation to demonstrate that each selling

activity was performed during the period of investigation (POI) and it

did not provide a quantitative analysis with evidentiary support to

support the claimed levels of intensity for the selling activities reported

in the selling functions chart.  GFCL's Section A Questionnaire

Response, dated April 26, 2021 at A-24 (AQR) (P.R. 44-P.R. 52) (C.R. 15-

C.R. 30) (Appx01910).  GFCL referred to its selling functions chart and

provided narrative descriptions and explanations, but GFCL did not

provide quantitative information, such as selling expense information,

which might have enabled Commerce to examine whether its narrative

explanations and other qualitative evidence are supported by its books

and records.  Remand Results at 30-31 (Appx08982-83).

In a supplemental questionnaire, Commerce again asked for GFCL to support the methodology it used to report the levels of intensity for each of the figures reported in the selling functions chart. Commerce's Letter, "Supplemental Section A Questionnaire," dated May 13, 2021 (SAQ) (P.R. 55) (C.R. 31) (Appx03299). In response, GFCL discussed the levels of intensity in its selling functions chart and reiterated that it had described its selling functions in its original response. GFCL's Supplemental Section A Questionnaire Response, dated May 24, 2021 (SAQR) at 2 (P.R. 59) (C.R. 67) (Appx03875).

In Commerce's final determination, Commerce found that GFCL did not provide an adequate quantitative analysis of the difference in levels of intensity reported in its selling functions chart. IDM at 9-10 (Appx01063-01064). Specifically, Commerce explained that:

> Upon further consideration of the information on the record of this investigation and based on the parties' comments, we agree that the quantitative analysis provided by GFCL was inadequate in response to Commerce's initial questionnaire, which requires that the respondent provide a quantitative analysis showing how the expenses assigned to the POI sales made at different claimed levels of trade impact price comparability, as well as how the quantitative analysis supports the claimed levels of intensity for the selling activities reported in the selling functions chart. Instead of providing such analysis, GFCL referred generally to its reported selling expenses and provided additional

> qualitative support for its reported levels of intensity in its
> selling functions chart.

*Id.* (citations omitted).  Yet, because Commerce concluded that GFCL did not have a notice of deficiency, it nonetheless granted GFCL the offset.  *Id*.

The Court held that Commerce's decision was not supported by substantial evidence because Commerce had found that GFCL failed to carry its burden to show entitlement to the CEP offset.  Remand Order at 10.  The Court concluded that GFCL had an opportunity to remedy any insufficiency through the supplemental questionnaire, and, thus, Commerce's explanation was not substantial evidence.  *Id.*

On remand, in light of the Court's opinion, Commerce determined that the record does not support GFCL's eligibility for a CEP offset. Remand Results at 17-18 (Appx08969-70).  Commerce explained that GFCL's submissions, including the Export Customer Complaint Register, customer correspondence and warehouse inventory, were qualitative in nature and only covered 2 of the 21 selling activities in the selling functions chart.  Remand Results at 16, 32 (Appx08968, Appx08984).

Still, before this Court, GFCL continues to present more qualitative analysis in the form of narrative explanation to fill the gap of the quantitative information missing from the record. *See* GFCL's Comments at 6 (discussing the resources GFCL puts into processing home market and U.S. sales) (citing AQR at Exhibit A-11 (selling functions chart) (Appx02101-02104), and SAQR at Exhibit SA-7 (revised selling functions chart) (Appx03912-03919). But none of this is the necessary *quantitative* information and analysis for Commerce to evaluate LOT claims to grant a CEP offset.

GFCL's view that a CEP offset is warranted because "there are clear and substantial differences in the selling activities between the home market and the U.S. market" is irrelevant. GFCL's Comments at 5. Commerce's decisions must be based on the record before it. *See, e.g. Yama Ribbons & Bows Co. v. United States*, 865 F. Supp. 2d 1294, 1298 (Ct. Int'l Trade 2012) ("Commerce must base its decisions on the record before it in each individual investigation."). Based on the record before it, Commerce reasonably determined that GFCL failed to provide a quantitative analysis based on verifiable financial data and documentation, *e.g.*, selling expense information, account records, *etc.*,

to support the claimed levels of intensity for the selling activities reported in its selling functions chart.  Remand Results at 30 (Appx08982); *see also id*. at 12-18, 29-33 (Appx08964-70, Appx08981-85).

Because Commerce found that GFCL failed to carry its burden under 19 C.F.R. § 351.401(b)(1) to demonstrate the appropriateness of an adjustment, Commerce declined to grant one.  Remand Results at 33-34 (Appx08985-86).  Contrary to GFCL's claim, Commerce's decision is supported by substantial evidence and in accordance with the Court's order.  *See* GFCL's Comments at 5-6; Remand Order at 10; *see also* Remand Results at 12-18, 29-33 (Appx08964-70, Appx08981-85) (explaining Commerce's remand redetermination).

GFCL asserts that Commerce correctly granted the CEP offset in the preliminary determination and though Commerce continued to grant the adjustment in the final determination on "different grounds," its final decision to grant the offset was correct.  GFCL's Comments at 4-5.  It also contends that "Commerce never clarified or specifically requested additional information relating to GFCL's provided quantitative analysis," and that "Commerce also never defined the

information expected in response to its request for quantitative analysis." GFCL's Comments at 12, 13. However, the record belies GFCL's assertions.

Commerce specifically requested the requisite information from GFCL twice: in the Initial AD Questionnaire and the Supplemental Section A Questionnaire. Initial AD Questionnaire at A-8 (Appx09312); Supplemental Section A Questionnaire (Dep't Commerce May 13, 2021) (SAQ) (P.R. 55) (C.R. 31) at 2 (Appx03304) (requesting GFCL "{p}rovide documentation supporting the methodology (*i.e.*, the quantitative analysis) used to report the levels of intensity to its selling activities in the selling functions chart to support its LOT adjustment."). These requests followed an explanation in the initial AD questionnaire regarding the rationale underlying the adjustments and what exactly was required. For example, the questionnaire stated that Commerce makes the adjustments only when there is a difference in the levels of trade and that difference is demonstrated to affect price comparability. Initial AD Questionnaire at A-7 (Appx09311). In that context, the questionnaire instructed:

> a. Provide information requested below for each selling activity reported in the selling functions chart at the end of this section.

The information you provide should support your claims regarding the level of intensity at which you performed sales activities.

...

    iv. Provide a quantitative analysis showing how the expenses assigned to POI/POR sales made at different claimed levels of trade impact price comparability.

...

    vi. Explain how the quantitative analysis provided in response to the requests for information above support the claimed levels of intensity for the selling activities reported in the selling functions chart.

*Id.* at A-7-A-8 (Appx09311-12). As explained above, GFCL's responses to both questionnaires only went to a qualitative analysis, did not provide verifiable financial data and documentation, and did not cover all selling activities. Remand Results at 17-18 (Appx08969-70) (citing AQR at Exhibit A-11 (Appx02101-02104)). Thus, GFCL's assertion that Commerce never clarified or requested the requisite information is contradicted by the record.

GFCL's attempt to shift the blame to Commerce for its failure to establish eligibility for the CEP offset is unavailing. *See QVD Food Co.*, 658 F.3d at 1324 ("The burden of creating an adequate record lies with interested parties."); 19 CFR § 351.401(b)(1) ("The interested party that is in possession of the relevant information has the burden of

establishing to the satisfaction of the Secretary the amount and nature of a particular adjustment{.}"). If GFCL needed clarification regarding Commerce's requests, it was GFCL's responsibility to seek such clarification from Commerce. *See*, *e.g.*, *SeAH Steel Corp. v. United States*, 659 F. Supp. 3d 1318 (Ct. Int'l Trade 2023) ("{T}he responsibility lies not with the agency, but with {the respondent} to clarify its understanding of the questionnaire in the event of confusion or claimed ambiguity."). Indeed, the initial AD questionnaire itself instructs: "If you have questions, we urge you to consult with the official in charge … ." Initial AD Questionnaire at G-1.

Because Commerce's decision not to grant GFCL a CEP offset is in accordance with the Court's remand order and supported by substantial evidence, the Court should sustain Commerce's decision on remand.

## III. The Court Should Sustain Commerce's Determination To Continue To Rely On GFCL's Allocated Movement Expenses Based On Its Finding That It Was Not Feasible For GFCL To Report Transaction-Specific Movement Expenses

In the original proceeding, Commerce accepted GFCL's reporting of certain U.S. movement expenses on an allocated basis, finding that transaction-specific reporting was not feasible based on the business

records GFCL maintained.  IDM at 6-7 (Appx01060-61).  This Court

held that "the problem with {Commerce's} finding" is that the agency

failed to address record evidence—the Export Customer Complaint

Register—showing that GFCL tracks merchandise batch numbers [

              ].  Remand Order at 7.  As such, the

Court remanded with instructions for Commerce to reconsider whether

it was feasible to report its expenses on a transaction-specific basis as

alleged by Daikin, based on documentation in the record, including the

Export Customer Complaint Register, shipping documents, and other

documents establishing the cost of freight for each individual shipment.

*See* Remand Instructions Order, ECF 42 (Mar. 14, 2024).

Commerce has complied with the Court's instructions.  On

remand, Commerce considered the Export Customer Complaint

Register, shipping and sales documents, and other documents from the

sales and shipment chain, which the Court held Commerce had not

considered in its final determination.  Remand Results at 6-9, 21-29

(Appx08958-61, Appx08973-81) (considering record evidence).  Upon

consideration of the record evidence, Commerce concluded that

although certain documents contain product batch numbers, "record

information does not indicate that batch numbers are tracked and recorded by GFCL in the ordinary course of business such that it was feasible for GFCL to report its movement expenses on a transaction-specific basis nor how batch numbers are associated with the merchandise." *See* Remand Results at 5 (Appx08957), *see also id.* at 8-9 (Appx08960-61).  Accordingly, Commerce continued to rely on GFCL's allocation for certain of its U.S. movement expenses.  *See* Remand Results at 2-12 (Appx08955-64).  The Court should sustain Commerce's remand redetermination because it is in accordance with the Court's order and is supported by substantial evidence.

## A.    Commerce Reasonably Determined That It Was Not Feasible For GFCL To Report Certain Movement Expenses On A Transaction-Specific Basis

Daikin first argues that Commerce wrongfully determined that it was not feasible for GFCL to report transaction-specific movement expenses.  Daikin's Comments at 5, ECF No. 61 (Sept. 17, 2024).  According to Daikin, Commerce's feasibility determination was wrong because the Export Customer Complaint Register tracked merchandise [                                                    ]; batch numbers were associated with specific sales and shipments; and it is

PUBLIC VERSION

not Commerce's job to save GFCL from a "burdensome exercise."

Daikin's Comments at 6-22.  Each of these claims is unsupported by the

record.  However, even if the record supported Daikin's claims, Daikin

fails to demonstrate that Commerce got it wrong based on the

feasibility standard.

In proceedings, Commerce prefers that respondents report

movement expenses on a transaction-specific basis, but such reporting

is not an absolute requirement in every instance.  Indeed, Commerce's

regulation specifies that, "{Commerce} may consider allocated expenses

. . . when transaction-specific reporting is not feasible, provided

{Commerce} is satisfied that the allocation method used does not cause

inaccuracies or distortions."  19 C.F.R. § 351.401(g)(1).  Accordingly, the

regulation permits allocations if the respondent seeking to report an

expense on an allocated basis demonstrates "to {Commerce's}

satisfaction that the allocation is calculated on as specific a basis as is

feasible," and explains "why the allocation methodology used does not

cause inaccuracies and distortions."  19 C.F.R. § 351.402(g)(2).

Commerce also must take into account the records maintained by the

party in question in the ordinary course of its business to determine

feasibility of transaction-specific reporting.  *See* 19 C.F.R. § 351.401(g)(3) ("In determining the feasibility of transaction-specific reporting . . . the Secretary will take into account the records maintained by the party in question in the ordinary course of its business.").

In the investigation, GFCL reported certain movement expenses on an allocated basis because transaction-specific reporting was not feasible based on its U.S. sales inventory and record-keeping systems. Remand Results at 3 (Appx08955); IDM at 6 (Appx01060); *see also* GFCL Section C Questionnaire Response, dated May 17, 2021 (ICQR) (P.R. 57) (C.R. 42) at C-27–C-30, Exhibit C-14 (Appx03539–42, Appx03616); GFCL Supplemental Section C Questionnaire Response (SCQR) (P.R. 84) (C.R. 91) at 7–8 (Appx05087–88); GFCL Second Supplemental Section C Questionnaire Response (SSCQR) (P.R. 99) (C.R. 176) at 2–3 (Appx06702–03); GFCL Pre-Preliminary Comments (P.R. 100) (C.R. 182) at 15–17 (Appx06771–73).

According to GFCL, it could not report movement expenses on a transaction-specific basis because it was unable to establish a one-to-one match between purchases by its U.S. affiliate from GFCL and sales

PUBLIC VERSION

by its U.S. affiliate to U.S. customers, based on its sales and inventory records. Specifically, GFCL explained that its U.S. affiliate, GFL Americas, stored inventory for U.S. sales in a warehouse and then sold merchandise from inventory to U.S. customers based on pending orders and availability of stock in the warehouse. *See* SCQR at 7 (Appx05087). GFCL further explained that, because sales of merchandise by its U.S. subsidiary, GFCL Americas LLC (GFCL Americas), to U.S. customers involved multiple purchases from GFCL, it was not feasible to directly tie purchases from GFCL to sales to unaffiliated customers or to establish a one-to-one correlation between purchases and sales. *Id.* In addition, GFCL explained that merchandise shipped from its U.S. warehouses could consist of lots of various sizes and product types, shipped over different time periods. *Id.*

As a result, GFCL reported its movement expenses on an allocated basis by product grade, based on grade weight in kilograms (kg). ICQR at C-8 (Appx03520). GFCL calculated per-unit movement expenses for each product sold to the United States by aggregating the actual grade-specific freight costs for its sales to GFL Americas during the POI by product and then dividing the actual freight costs by the weight of the

PUBLIC VERSION

grade-specific sales to GFL Americas during the POI by product. *Id.* at Exhibit C-14 (Appx03617). GFCL submitted a spreadsheet for the calculation of movement expenses for [          ] grades of subject and non-subject merchandise. *Id.* From these grades, GFCL determined which ones were sold to the United States during the POI. *Id.* GFCL submitted sample shipping documents to confirm that it tracks the quantity and costs of shipping subject merchandise to a single warehouse in the United States on a per-grade basis. AQR at A-30 (Appx01916).

From this reporting, Commerce determined in the *Final Determination* that GFCL's reporting on an allocated basis was reasonable and did not cause inaccuracies nor distortions. *See* IDM at 6 (Appx01060).

### 1. Substantial Record Evidence Supports Commerce's Finding That The Export Customer Complaint Register Does Not Track Merchandise

]

As instructed by the Court, Commerce considered the Export Customer Complaint Register. Remand Results at 6 (Appx08958). Importantly, the Export Customer Complaint Register does <u>not</u> "track{}

merchandise [

      ]," as Daikin argues.  Daikin's Comments at 6.  The Export

Customer Complaint Register is exactly what its name indicates:  it is a

register of post-sale complaints made by customers.  *See* SAQR at

Exhibit SA-3 (Appx03913); Remand Results at 6 (Appx08958).  There is

no evidence on the record which supports that the Export Customer

Complaint Register is used by GFCL in the ordinary course of business

to track merchandise by [                    ] from the [

            ].

      Daikin again asserts that the Export Customer Complaint

Register proves that GFCL routinely tracks merchandise batch

numbers, this time claiming that the Court directed its own factual

finding on the matter.  *See* Daikin's Comments at 3; Remand Results at

21-22 (Appx08973-74) (addressing the claim).  However, as Commerce

explained, the Export Customer Complaint Register demonstrates

neither that GFCL routinely tracks [

            ] nor that GFCL tracks merchandise by [                  ] in

the ordinary course of business such that it was feasible for GFCL to

report movement costs on a transaction-specific basis.  Remand Results
at 5-12, 20-29 (Appx08957-64, Appx08972-81).

For example, Commerce outlined that the Export Customer
Complaint Register was submitted by GFCL to show the technical
support provided to U.S. customers in the unique circumstance of a
customer complaint.  Remand Results at 6 (Appx08958).  Commerce
considered that the register "neither contains a full list of transactions
nor is it maintained in relation to transactions which do not result in
complaints," *id.* at 22 (Appx08974), and that according to GFCL, the
register is "extraordinary and outside of GFCL's normal course of
business, if a customer is making a complaint."  Remand Results at 22
(Appx08974) (citing GFCL's Comments at 4-5).  Based on the evidence,
Commerce considered that "{i}nformation is recorded in the register in
the unique circumstance of a post-sale customer complaint," that the
complaint information "includes [

            ]," and that "there is no indication that the [

                        ], associated with the [

        ], derives from GFCL (rather than the customer itself).  *Id.*
Accordingly, not only does the Export Customer Complaint Register fail

to demonstrate that GFCL routinely tracks merchandise by batch number, it fails to demonstrate that transaction-specific reporting is feasible.

Daikin's "simple proposition" is that "if GFCL is capable of linking [                                        ] with [

                    ] for the [    ] sales included in the Export Customer Complaint Register, it is capable of doing so for its U.S. sales in general." Daikin's Comments at 10.  However, Daikin's proposition is neither simple nor record-based.  For example, Daikin's proposition fails to identify by what record maintained in the ordinary course of GFCL's business this is feasible.  Daikin's Comments at 10.  Beyond the fact that the Export Customer Complaint Register does not track merchandise batch numbers, for the reasons outlined above, GFCL could not use the Export Customer Complaint Register to report its movement expenses on a transaction-specific basis.  Daikin is relying on its own assumptions rather than any record-based evidence.

Further, Commerce's regulations specify that "{i}n determining the feasibility of transaction-specific reporting . . . {Commerce} will take into account the records maintained by the party in question in the

ordinary course of its business."   19 C.F.R. § 351.401(g)(3).  As

Commerce explained, "that something is *not impossible* is not the

standard. … 'Commerce may consider allocated expenses when

transaction-specific reporting is not feasible, accounting for the records

maintained by the respondent in the ordinary course of its business.'"

Remand Results at 24 (Appx08976) (citing section 351.401(g)).

Record evidence supports GFCL's explanation that transaction-

specific reporting was not feasible due to its sales and inventory

processes and accounting for the records maintained by GFCL in the

ordinary course of its business.  *See* SCQR at Exhibit SC-35; SAQR at

Exhibits SA-4, SA-5 (Appx03920, Appx03953).  Accordingly, Commerce

concluded that neither the Export Customer Complaint Register nor the

claim that alternative reporting is possible, by some method set forth by

Daikin, detracts from GFCL's explanation or Commerce's determination

based on record evidence. Remand Results at 24 (Appx08976).  That is,

Commerce concluded that the Export Customer Complaint Register

does not contradict GFCL's claim that transaction-specific reporting

was not feasible.

Daikin criticizes Commerce's conclusions regarding the Export

Customer Complaint Register, Daikin's Comments at 9-11, but

Commerce's consideration of the evidence is reasonable, and it has

provided an adequate explanation to support its findings. *Cleo Inc. v.*

*United States*, 501 F.3d 1291, 1296 (Fed. Cir. 2007) (citations omitted).

For example, Daikin claims that Commerce's statement that there is

"no indication that the [

], … derives from GFCL" is unreasonable.  Daikin's Comments

at 7 (citing Remand Results at 6 (Appx08958)).  But Daikin puts forth

no record evidence to contradict Commerce's observation that the record

lacks evidence that the [

] derives from GFCL.  Moreover, Commerce explained:

> Our point was not that the [                    ] in the Export
> Customer Complaint Register are *prepared* by someone else
> other than GFCL. Our point was that the {register} falls
> short of demonstrating that GFCL tracks merchandise by
> [                                                              ]
> because, for example, it is entirely possible that the
> customer provides the information, including [
>         ], to GFCL from the shipment it has received when it
> contacts GFCL with a complaint and that the customer's
> complaint is recorded in the register based on the
> information the customer has provided.

Remand Results at 23 (Appx08975).  Commerce reasonably found that

information in the Export Customer Complaint Register detailing

complaints made by the customer comes from the customer.  Remand

Results at 23 (Appx08975).

Daikin claims that Commerce "goes so far as to speculate that *all*

of the information in the Export Customer Complaint Register may

originate with customers and that GFCL merely 'maintained' the

document."  Daikin's Comments at 11 (citing Remand Results at 23

(Appx08975)).  This mischaracterizes Commerce's position—the agency

never made such a sweeping statement.  In the Remand Results,

Commerce stated:

> Given the designated purpose of the Export Customer
> Complaint Register as a register of post-sale complaints
> made by customers, the information in the Export Customer
> Complaint Register's [
>
>
>                              reflects complaints from customers on
> shipments they have received versus information originating
> from GFCL.  Again, the record indicates that the Export
> Customer Complaint Register tracks complaints made by
> customers. Although Commerce agrees that the register was
> maintained by GFCL, the register does not demonstrate that
> GFCL tracks merchandise by [
>                              nor that GFCL uses the
> Export Customer Complaint Register to do so.

Remand Results at 23 (Appx08975).  Commerce's finding is reasonable and based on the record.

That the Export Customer Complaint Register includes other information or information from GFCL, for example, "[                    ], does not contradict Commerce's finding because Commerce never concluded that *all* of the information in the register originated with customers.  *See* Daikin's Comments at 12.  Instead, Commerce observed that "there is no indication that the [

                    ], associated with the [                    ], derives from GFCL,"  Remand Results at 6 (Appx08958), and that "the information in the {register's} [


                    ] reflects complaints from customers on the shipments they have received versus information originating from GFCL."  *Id*. at 23 (Appx08975).  Indeed, Commerce acknowledged that the Export Customer Complaint Register was submitted by GFCL to show the technical support it provided to U.S. customers.  Yet, Daikin goes even further, speculating without citation to a single record document that "GFCL could not possibly

undertake the "[                    ]" and "[                    ]"

described unless it could connect the [

                                                    ]."

Daikin's Comments at 12.

Commerce considered the Export Customer Complaint Register and drew "inferences that the evidence fairly demands." *Allentown Mack Sales and Service, Inc. v. N.L.R.B.*, 522 U.S. 359, 378-79 (1998). That Commerce arrived at a different conclusion than the one preferred by Daikin does not make it unreasonable or unlawful.

### 2. **Commerce Reasonably Considered Feasibility**

Daikin claims that Commerce excused GFCL from transaction-specific reporting because "doing so would require more work." Daikin's Comments at 18. According to Daikin, it is "not Commerce's job to save GFCL from a 'burdensome exercise'" and that transaction-specific reporting was feasible because GFCL maintained [

]. Daikin's Comments at 18 (citing GFCL Section C Questionnaire Response at Exhibit C-30 (Appx.03677)). Daikin's claims are baseless.

First, as outlined above, Commerce found that it was not feasible for GFCL to report certain of its movement expenses on a transaction-specific basis, accounting for the records maintained by GFCL in the ordinary course of its business. Remand Results at 9 (Appx08961). Again, in determining feasibility, the regulation states that Commerce "will take into account the records maintained by the party … in ordinary course of its business." 19 C.F.R. § 351.402(g)(3). The regulation also provides that Commerce will take into account "the number of sales made by the party during the investigation." *Id*. In the remand results, Commerce explained its determination that transaction-reporting in the manner advocated for by Daikin was not feasible.

> {T}he record evidence here shows that attempts to link a specific batch number to a particular invoice would be a burdensome exercise involving a manual review of shipping documents for GFCL's sales to GFL Americas, GFCL America's sales to unaffiliated U.S. customers, as well as warehouse documentation. For example, the sample sales documentation for a sale made through Channel 3 (where GFCL ships from India to a U.S. warehouse for a sale to be made to an unaffiliated customer includes [    ] pages of documents. Considering that there are [    ] U.S. sales involving hundreds of unique invoices to [    ] different U.S. customers through [    ] different sales channels, GFCL would have to review and compile thousands of pages of

>  records to link movement expenses to particular
>  transactions.

Remand Results at 9 (Appx08961).  Contrary to Daikin's argument,

Commerce thoroughly explained its feasibility determination and its

analysis is consistent with the regulation.  *Id.* at 9-10 (Appx08961-62);

*see also* Daikin's Comments at 18, 19.

Second, Daikin confuses what is feasible in accordance with the

regulation with what is *possible*.  Daikin's Comments at 18 (stating that

transaction-specific reporting was "feasible" because GFCL maintained

[                                                                    ]); *id.* at

20 ("GFCL is capable of reporting movement expenses on a transaction

specific basis").  However, the question before Commerce is not whether

transaction-specific reporting is *possible*.  Instead, the question is one of

*feasibility* based on existing records maintained by GFCL in the

ordinary course of its business. 19 C.F.R. § 351.402(g)(3); *SNR*

*Roulements v. United States,* 341 F. Supp. 2d 1334, 1351 (Ct. Int'l Trade

2004) ("Nothing suggests that companies are required to make

wholesale changes to their record-keeping practices to comply with 19

C.F.R. 351.401(g)(1)").

Daikin also insists that "the standard does not require that GFCL actually link sales and shipments in the ordinary course of business to be obligated to calculate transaction-specific movement expenses," and that "it is only necessary that GFCL possess the information in its records necessary to make the calculation." Daikin's Comments at 21. These claims ignore the regulation. GFCL is not obligated to report expense information it does not track in the ordinary course of business and that it cannot feasibly or perhaps even reliably produce.

In the Remand Results, Commerce explained that in another antidumping proceeding, *Polytetrafluoroethylene Resin from India*, GFCL went to great lengths to attempt to link movement expenses to specific sales but was unable to duplicate the methodology at verification due to the complicated nature of the calculation. Remand Results at 9 (Appx08961) (citing *Polytetrafluoroethylene Resin from India*, 83 Fed. Reg. 48594 (September 26, 2018) (*Polytetrafluoroethylene Resin from India*), and accompanying IDM at Comment 2). Daikin incorrectly asserts that Commerce's application of adverse facts available (AFA) to GFCL in that proceeding "reflects that Commerce had previously found that GFCL could report movement expenses on a

transaction-specific basis and was required to expend its 'maximum effort' in complying with Commerce's request for transaction-specific data." Daikin's Comments at 22 (citing *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003)). In fact, Commerce applied AFA because it was unable to verify the movement expenses which GFCL had reported on a transaction-specific basis but could not replicate at verification because of the complicated calculation. Remand Results at 26 (Appx08978). Because GFCL provided information (transaction-specific expenses) which Commerce was unable to verify, Commerce determined that GFCL fell short of "maximum effort" standard. *Polytetrafluoroethylene Resin from India* IDM at Comment 2. Based on GFCL's experience in that proceeding, it is unsurprising that it allocated expenses here.

### 3. Commerce Reasonably Found There Is No Record Indication Of How Batch Numbers Are Associated With Specific Shipments Or Sales

On remand, Commerce considered shipping and sales documents on the record in accordance with the Court's remand order. Remand Results at 6-8 (Appx08958-60). Upon review of the record, Commerce found that although certain shipping and sales documents contain

batch numbers [                                                    ], *see* AQR

at Exhibit A-13; SAQR at Exhibits SA-4, SA-5 (Appx03920, Appx03953),

there is no record indication of *how* the batch numbers are associated

with specific shipments or sales of merchandise.  Remand Results at 6

(Appx08958).

      Daikin argues that batch numbers were associated with specific

sales and shipments.  Daikin's Comments at 13-17.  However,

Commerce's clear concern was with how batch numbers are associated

with specific shipments or sales.  Remand Results at 24 (Appx08976).

To accurately calculate and report movement expenses on a transaction-

specific basis, GFCL must be able to establish a one-to-one correlation

between its U.S. affiliate's purchases from GFCL and sales to the U.S.

customer.  Commerce explained that "{n}othing on the record indicates

that the [



                                                        ]."  Remand Results

at 25 (Appx08977).  Accordingly, absent information as to how batch

numbers are associated with the merchandise in the sales and shipping

PUBLIC VERSION

documents, the mere ability to connect the documents is insufficient to demonstrate feasibility. *Id.*

Daikin's other claims are meritless. [

]" did not resolve Commerce's concern with how batch numbers are associated with specific shipments or sales. Daikin's Comments at 13 (citing Remand Results at 6-7 (Appx08958-59)). Further, Commerce concluded that nothing indicates that [

]"—not that the batch numbers themselves are not unique. Remand Results at 7 (Appx08959). As Commerce explained, "{t}hat certain documents from the sales and shipment chain contain the same batch numbers does not demonstrate that GFCL routinely tracks merchandise batch numbers [

] or that it would be feasible for GFCL to piece these various documents together to report U.S. movement

PUBLIC VERSION

expenses … on a transaction-specific basis."  Remand Results at 7 (Appx08959).

Because of the way in which GFCL maintains its records, it was unable to establish a one-to-one relationship with respect to sales between GFCL and its U.S. affiliate and sales from the affiliate to its U.S. customers.  Remand Results at 8 (Appx08960).  GFCL's movement expenses are not incurred and recorded in its accounting system at the time the sale is made to unaffiliated U.S. customers.  *Id*.  GFCL's accounting records show inland freight expenses from the plant/warehouse to the customer as well as international freight expenses and list various freight providers and relevant expenses, but no [                                                          ].  *Id*.  As such, Commerce continued to find that there is no record evidence that batch numbers are tracked and recorded in GFCL's normal books and records for GFCL to feasibly establish a one-to-one link between sales and shipping documents.

## B.    Commerce Reasonably Accepted GFCL's Allocation Methodology For U.S. Movement Expenses

In the Remand Order, the Court found that Commerce failed to consider whether record evidence indicated that GFCL's reporting caused inaccuracies or distortions to its costs.  Remand Order at 8.

During remand, Commerce considered whether GFCL's allocation caused inaccuracies or distortions in accordance with the Court's order, and reasonably concluded that it does not. Remand Results at 11-12 (Appx08963-64). Now, Daikin argues that Commerce wrongfully accepted GFCL's "distortive allocation" of movement expenses. Daikin's Comments at 23-30. Substantial record evidence supports Commerce's determination to accept GFCL's allocation methodology and rely on GFCL's allocated movement expenses.

According to section 351.401(g)(2), a party seeking to report on an allocated basis must demonstrate to Commerce's satisfaction that the allocation methodology used does not cause inaccuracies or distortions. 19 C.F.R. § 351.401(g)(2). The "satisfaction" standard provides Commerce with the discretion to decide whether to accept a proposed allocation. *Koyo Seiko Co. v. United States*, 551 F.3d 1286, 1292 (Fed. Cir. 2009).

Daikin argues that "GFCL's methodology is equivalent to allocating movement expenses by product value, a distortive method that has been rejected by the courts." Daikin's Comments at 23 (citing *SKF USA Inc., v. United States*, 800 F. Supp. 2d 1316, 1324-25 (Ct. Int'l

Trade 2011) (*SKF USA*)).  In *SKF USA*, Commerce rejected the

respondent's proposed allocation method because it found it to

be distortive based on an analysis of the underlying record facts.  800 F.

Supp. 2d at 1324-25; *see also* Remand Results at 27 (Appx08979).  The

Court sustained Commerce's determination, holding that "Commerce

reasonably determined that allocation based on weight avoided the

distortion that {Commerce} identified as occurring when value-based

allocation was applied."  Remand Results at 27 (Appx08979) (citing *SKF*

*USA*, 800 F. Supp. 2d at 1325).  Here, however, Commerce did not make

the same finding.

Daikin argues that GFCL's method is distortive because GFCL's

reported expenses show [      ] variation between product types

[                                    ].  Daikin's Comments at 23.

However, Commerce explained that GFCL based its movement expense

calculations on the actual expenses incurred and tracked by grade,

which is equivalent to product code in GFCL's reporting, in accordance

with the company's normal books and records.  Remand Results at 28

(Appx08980).  Commerce did not find GFCL's allocation "necessarily

distortive simply because it results in different per-unit amounts being calculated for different products." *Id*.

Daikin criticizes Commerce for "cherry-pick{ing}" evidence by examining a single product code. Daikin's Comments at 25. However, Commerce did not select the particular product and instead examined the submitted record evidence: the sample sales documents. Remand Results at 28 (Appx08980).

Daikin's argument points to the same evidence that Commerce considered and suggests that Commerce should have arrived at a different conclusion. That does not render Commerce's determination unlawful or unreasonable. Even if the record arguably supported Daikin's viewpoint, that would *not* mean that Commerce's contrary findings are unsupported by substantial evidence. *See Ad Hoc Shrimp Trade Action Comm. v. United States*, 802 F.3d 1339, 1348 (Fed. Cir. 2015) ("An agency finding may still be supported by substantial evidence even if two inconsistent conclusions can be drawn from the evidence.") (citing *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Commerce complied with the Court's remand order and

PUBLIC VERSION

reasonably reached a determination supported by the record evidence.

Therefore, the Court should sustain Commerce's determination.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain

Commerce's remand redetermination.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

PATRICIA M. McCARTHY
Director

/s/ Claudia Burke
CLAUDIA BURKE
Deputy Director

OF COUNSEL:

/s/ Collin T. Mathias
COLLIN T. MATHIAS
Trial Attorney
LESLIE M. LEWIS                Civil Division
Attorney                       U.S. Department of Justice
Office of the Chief Counsel    P.O. Box 480
   for Trade Enforcement &    Ben Franklin Station
   Compliance                  Washington, DC 20044
U.S. Department of Commerce    Tel: (202) 307-0315
                               Email:collin.t.mathias@usdoj.gov

November 1, 2024               *Attorneys for Defendant*

41

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 2(b) of the Court's Standard Chambers Procedures, defendant's counsel certifies that this brief complies with the Court's type-volume limitation rules and the Court's Order (ECF No. 50,51). According to the word count calculated by the Microsoft Word processing system used to prepare this brief, I certify that this brief contains 7214 words.

<u>/s/ Collin T. Mathias</u>

November 1, 2024