UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

———————————————————

| | |
|---|---|
| DAIKIN AMERICA, INC., ) | |
| ) | PUBLIC DOCUMENT |
| *Plaintiff,* ) | |
| ) | |
| v. ) | Court No. 22-00122 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| *Defendant,* ) | |
| ) | |
| and ) | |
| ) | |
| GUJARAT FLUOROCHEMICALS ) | |
| LIMITED, ) | |
| ) | |
| *Defendant-Intervenor.* ) | |

———————————————————

## PLAINTIFF'S COMMENTS SUPPORTING
## REMAND REDETERMINATION IN PART

Roger B. Schagrin, Esq.
Luke A. Meisner, Esq.
Nicholas C. Phillips, Esq.*
SCHAGRIN ASSOCIATES
900 Seventh Street, NW, Suite 500
Washington, DC 20001
(202) 223-1700

*Counsel for Daikin America, Inc.*

Dated: November 15, 2024

*Admitted only in New York. Practice limited
to matters before federal courts and agencies.

# **TABLE OF CONTENTS**

I.   SUMMARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  SUBSTANTIAL EVIDENCE SUPPORTED COMMERCE'S
     FINDING THAT GFCL FAILED TO DEMONSTRATE ITS
     ELIGIBILITY FOR A CEP OFFSET. . . . . . . . . . . . . . . . . . . . . . . 3
     A.   Legal Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     B.   Commerce Lawfully Determined that GFCL Failed to Carry
          Its Burden to Demonstrate Entitlement to a CEP Offset . . .5

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

**Cases**

*Ad Hoc Shrimp Trade Action Comm. V. United States,*
  616 F. Supp. 2d 1354, 1374 (Ct. Int'l Trade 2009) .................................................... 4

*Andaman Seafood Co., Ltd. v. United States,*
  768 F. Supp. 2d 1315, 1320 (Ct. Int'l Trade 2011) .................................................... 4

*Daikin America, Inc. v. United States,* Ct. No. 22-00122,
  Slip Op. 24-32 (Ct. Int'l Trade Mar. 14, 2024) ........................................................ 1

*Dong-A Steel Company v. United States,*
  475 F. Supp. 3d 1317, 1347 (Ct. Int'l Trade 2020) ............................................. 5, 11

*Hyundai Steel Company v. United States,*
  365 F. Supp. 3d 1294, 1300 (Ct. Int'l Trade 2019) .................................................... 4

*Micron Technology, Inc. v. United States,*
  243 F.3d 1301, 1305 (Fed. Cir. 2001) .............................................................. 3, 13

*SeAH Steel Corp. v. United States,*
  659 F. Supp. 3d 1318 (Ct. Int'l Trade 2023) ......................................................... 14

*Sucocitrico Cutrale Ltda. V. United States,*
  2012 WL 2317764 at *5 (Ct. Int'l Trade 2012) ......................................................... 4

*WVD Food Co. v. United States,* 658 F.3d 1318, 1324 (Fed. Cir. 2011) ....................... 4

**Statutes and Regulations**

19 C.F.R. § 351.401(b)(1) ................................................................................ 4, 13

19 C.F.R. § 351.412(c)(2) ..................................................................................... 4

19 C.F.R. § 351.412(f)(1) ..................................................................................... 3

19 C.F.R. § 351.412(f)(2) ..................................................................................... 4

19 U.S.C. § 1677b(7)(B) ................................................................................. 3, 12

19 U.S.C. § 1677m(d) ........................................................................................... 8

**Administrative Decisions**

*Polyethylene Sheet from the Republic of Korea: Final Determination of Sales at Less
  Than Fair Value,* 85 Fed. Reg. 44,276 (Dep't Commerce July 22, 2020) and
  accompanying IDM at Comment 4 .......................................................................... 5

## GLOSSARY OF TERMS

| | |
|---|---|
| Constructed Export Price | **CEP** |
| U.S. Department of Commerce | **Commerce** |
| Daikin America, Inc. | **Daikin** |
| Gujarat Fluorochemicals Limited | **GFCL** |
| Issues and Decision Memorandum | **IDM** |
| Level of Trade | **LOT** |
| Period of Investigation | **POI** |
| Polytetrafluoroethylene | **PTFE** |

BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

_____

|  |  |
|---|---|
| DAIKIN AMERICA, INC., | ) |
|  | ) |
| *Plaintiff,* | ) |
|  | ) |
| v. | ) |
|  | ) |
| UNITED STATES, | ) |
|  | ) |
| *Defendant,* | ) |
|  | ) |
| and | ) |
|  | ) |
| GUJARAT FLUOROCHEMICALS LIMITED, | ) |
|  | ) |
| *Defendant-Intervenor.* | ) |

PUBLIC DOCUMENT

Court No. 22-00122

_____

## PLAINTIFF'S COMMENTS SUPPORTING
## <u>REMAND REDETERMINATION IN PART</u>

On behalf of Daikin America, Inc. ("Daikin" or "Plaintiff"), we hereby submit comments supporting in part the final remand redetermination filed by the U.S. Department of Commerce ("Commerce") on July 11, 2024 ("Remand Redetermination") pursuant to the order issued by the Court of International Trade ("CIT") in *Daikin America, Inc. v. United States*, Ct. No. 22-00122, Slip Op. 24-32 (Ct. Int'l Trade Mar. 14, 2024) (ECF No. 42) ("*Daikin Remand Order*"). As discussed below,

PUBLIC DOCUMENT

Commerce's determination on remand that Gujarat Fluorochemicals Limited ("GFCL" or "Defendant-Intervenor") failed to demonstrate its eligibility for a constructed export price ("CEP") offset was lawful and supported by substantial evidence. This aspect of its Remand Redetermination should, therefore, be upheld.

## I. Summary

Commerce's Remand Redetermination found that GFCL failed to demonstrate its eligibility for a CEP offset. Despite repeated instructions from Commerce, GFCL failed to provide a quantitative analysis or provide documentation supporting its claims regarding the selling activities it allegedly performed in the U.S. and home markets. This made it impossible for Commerce to determine whether the qualitative evidence that GFCL provided – mostly consisting of narrative descriptions of selling activities – was actually grounded in GFCL's books and records. It was GFCL's burden to demonstrate its eligibility for a CEP offset to the satisfaction of Commerce. Because Commerce's Remand Redetermination reasonably explained how the evidence GFCL provided fell short of Commerce's requirements, the

denial of a CEP offset was lawful and supported by substantial

evidence.

## II. Substantial Evidence Supported Commerce's Finding that GFCL Failed to Demonstrate its Eligibility for a CEP Offset

### A. Legal Background

Commerce will grant a CEP offset "only where":

(i)   Normal value is compared to constructed export price;
(ii)  Normal value is determined at a more advanced level of
      trade than the level of trade of the constructed export price;
      and
(iii) . . . the data available do not provide an appropriate basis to
      determine . . . whether the difference in level of trade affects
      price comparability.

19 C.F.R. § 351.412(f)(1); *see also* 19 U.S.C. § 1677b(7)(B). "Level of

trade" refers to the marketing stage at which sales are made – for

example, wholesale versus retail – and sales made at "more advanced"

levels of trade incur greater indirect selling expenses. *See Micron*

*Technology, Inc. v. United States*, 243 F.3d 1301, 1305 (Fed. Cir. 2001).

By granting a CEP offset, Commerce ensures an apples-to-apples

comparison of sales made at different marketing stages by reducing the

normal value of a respondent's sales by "the amount of indirect selling

expenses included in normal value, up to the amount of indirect selling

expenses deducted in determining constructed export price." 19 C.F.R. §

3

351.412(f)(2). Therefore, a precondition to a respondent receiving a CEP offset is the existence of "{s}ubstantial differences in selling activities" between the levels of trade. 19 C.F.R. § 351.412(c)(2).

It is the respondent's burden to demonstrate its eligibility for a CEP offset. *See* 19 C.F.R. § 351.401(b)(1) ("The interested party that is in possession of the relevant information has the burden of establishing to the satisfaction of the Secretary the amount and nature of a particular adjustment."); *see also WVD Food Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011)), *Ad Hoc Shrimp Trade Action Comm. v. United States*, 616 F. Supp. 2d 1354, 1374 (Ct. Int'l Trade 2009). Accordingly, "{t}he party seeking a CEP offset bears the burden of establishing that the differences in selling functions performed in the home and U.S. markets are 'substantial.'" *Hyundai Steel Company v. United States*, 365 F. Supp. 3d 1294, 1300 (Ct. Int'l Trade 2019) (quoting *Sucocitrico Cutrale Ltda. v. United States*, Ct. No. 10-00261, 2012 WL 2317764, at *5 (Ct. Int'l Trade June 1, 2012)); *see also Andaman Seafood Co., Ltd. v. United States*, 768 F. Supp. 2d 1315, 1320 (Ct. Int'l Trade 2011) ("In order to receive a CEP offset, the {respondent} must supply evidence that . . . different selling activities are actually performed at the

PUBLIC DOCUMENT

allegedly different levels of trade."). To assess whether the purported

differences between selling functions performed at each level of trade

are in fact "substantial," it is Commerce's practice to require that

respondents support such claims with both qualitative and quantitative

evidence. *See, e.g., Polyethylene Sheet from the Republic of Korea: Final

Determination of Sales at Less Than Fair Value*, 85 Fed. Reg. 44,276

(Dep't Commerce July 22, 2020) and accompanying IDM at Comment 4.

"Commerce is . . . entitled to draw its own conclusions over what

constitutes a sufficiently 'significant' difference in LOTs so as to merit a

CEP offset." *Dong-A Steel Company v. United States*, 475 F. Supp. 3d

1317, 1347 (Ct. Int'l Trade 2020).

### B. Commerce Lawfully Determined that GFCL Failed to Carry Its Burden to Demonstrate Entitlement to a CEP Offset

In the underlying investigation, Commerce repeatedly sought

information that could support GFCL's claim that it performed

substantially different selling functions in its home and U.S. markets

during the POI. In its initial Section A Questionnaire, Commerce

required that GFCL do the following: (i) provide information

documenting each claimed selling activity and the level of intensity at

which it was performed; (ii) provide information documenting that each selling activity was performed during the POI; (iii) indicate how often each selling activity was performed; (iv) provide a "quantitative analysis showing how the expenses assigned to POI/POR sales made at different claimed levels of trade impact price comparability"; (v) demonstrate how indirect selling expenses vary by the different levels of trade claimed; and (vi) "{e}xplain how the quantitative analysis . . . support{s} the claimed levels of intensity for the selling activities{.}" *See GFCL Section A Questionnaire Response* (Apr. 26, 2021) at A-18-25, Appx01904-01911. In its initial questionnaire response, GFCL ignored most of these requests and instead provided a selling functions chart listing each claimed selling activity with ratings from zero to ten for frequency, along with narrative descriptions of the selling activities. *See id.* at Exhibit A-11, Appx02102; A-20-23, Appx01906-01909. In response to Commerce's instruction to provide a quantitative analysis supporting its claimed selling activities, GFCL responded only that "{t}here is significant variation in the level of trade between U.S. sales and Home Market sales, which can be quantified when comparing the expenses

assigned to sales associated with each level of trade." *Id.* at A-24, Appx01910.

Recognizing the insufficient and tautological nature of this response, Commerce repeated its request for a quantitative analysis capable of demonstrating that GFCL had, in fact, performed the selling activities it claimed at the levels of intensity described in its selling functions chart. *See GFCL Supplemental Section A Questionnaire Response* (May 24, 2021) at 1, Appx03880 (requiring GFCL to "{p}rovide documentation supporting GFCL's methodology (*i.e.*, the quantitative analysis) used to report the levels of intensity . . . provided by GFCL for each of the figures reported in Exhibit A-11"). GFCL's response was manifestly inadequate. GFCL merely reiterated that it had used a subjective scale to report the levels of intensity for each claimed selling activity and provided certain supporting documentation for two of its 21 claimed selling activities. *See id.* at 2, Appx03881.

Commerce's Final Determination expressly found that "the quantitative analysis provided by GFCL was inadequate," but nonetheless granted a CEP offset anyway because Commerce believed that it had failed to properly "inform GFCL that it required more

information" per the notice requirements of 19 U.S.C. § 1677m(d). *Final Affirmative Determination in the Less-Than-Fair-Value Investigation of Granular Polytetrafluoroethylene Resign from India* (Jan. 18, 2022) and accompanying IDM at 9-10, Appx01063-01064.

On review, this Court first expressed skepticism that 19 U.S.C. § 1677m(d) could apply in situations where, as here, a respondent merely failed to carry its burden to demonstrate eligibility for a favorable adjustment. *Daikin* at 9 n. 3. Regardless, this Court found that "it is unclear why {Commerce} concluded that {GFCL} had no opportunity to cure the deficiency" in its selling activities reporting, given Commerce's repeated requests, and that "{GFCL's} response to the supplemental questionnaire afforded it a chance to remedy the insufficiency insofar as § 1677m(d) required any such opportunity." *Id.* at 9-10.

Commerce's Remand Redetermination correctly and lawfully determined that GFCL failed to avail itself of that opportunity and therefore failed to carry its burden to demonstrate eligibility for a CEP offset. Commerce fulsomely described the notice it had in fact provided

to GFCL regarding its inadequate reporting and GFCL's insufficient

response:

> In its supplemental questionnaire, Commerce asked GFCL
> to provide documentation supporting its quantitative
> analysis. In response, GFCL discussed the levels of intensity
> in its selling functions chart and reiterated that it described
> its selling functions in its original questionnaire response.
> The only new information GFCL provided in its
> supplemental questionnaire response was an Export
> Customer Complaint Register and copies of correspondence
> with customers to show the technical support it provided to
> customers. GFCL did not demonstrate how indirect selling
> expenses vary by the different claimed LOTs, as required by
> the questionnaire. Nor did it provide any selling expense
> data . . . . That is, GFCL's response lacks an adequate
> quantitative analysis{.}

Remand Redetermination at 17-18, Remand Appx08712-08713.

Although GFCL claimed it "provided the information it could to

demonstrate" the selling expenses associated with different claimed

selling activities, Commerce found on remand that "GFCL never

provided further explanation or a comparison of such expenses even

though it was in possession of the information." *Id* at 33, Remand

Appx08985. Further, "GFCL only provided qualitative support

documentation for two of the 21 reported selling activities and no

documentation at all pertaining to a quantitative analysis." *Id.* Because

GFCL's paltry support for its claims fell well short of substantial

evidence, Commerce declined to grant it a CEP offset. *See id.* at 33-34, Remand Appx08985-08986.

GFCL has submitted comments in opposition to this aspect of Commerce's Remand Redetermination. *See Defendant-Intervenor Gujarat Fluorochemicals Limited's Comments In Opposition To Remand Redetermination* (Sept. 9, 2024) ("GFCL Comments"), ECF No. 57. These comments largely repeat the narrative descriptions of selling activities that GFCL had already provided to Commerce and which Commerce had already deemed insufficient. GFCL asserts that there are "clear and substantial differences in the selling activities between the home market and the U.S. market on the record" and pointed to the "detailed descriptions, as well as ample supporting documentation" that allegedly existed on the record to support that claim. GFCL Comments at 5, 8. However, as Commerce explained, narrative descriptions are not evidence that selling activities were performed as claimed. *See* Remand Redetermination at 30-31, Remand Appx08982-08983; *see also Defendant's Confidential Response to Comments on the Remand Redetermination* (Nov. 1, 2024) ("U.S. Response"), ECF No. 68 at 9 ("GFCL . . . provided narrative descriptions and explanations, but

PUBLIC DOCUMENT

GFCL did not provide quantitative information, such as selling expense information, which might have enabled Commerce to examine whether its narrative explanations and other qualitative evidence are supported by its books and records.").

Further, GFCL's reference to "ample documentation" is fatally undermined by the fact that GFCL initially provided *no* supporting documentation and only later, in response to Commerce's supplemental questionnaire, provided certain documents that related to only two of the 21 selling activities listed in GFCL's selling functions chart. *See* Remand Redetermination at 30-31, Remand Appx08982-08983. To obfuscate this glaring deficiency, GFCL claims that "{n}ot all selling functions carry the same weight," therefore, "requiring the same amount of supporting information for each selling function is unreasonable." GFCL Comments at 7. However, "Commerce is . . . entitled to draw its own conclusions over what constitutes a sufficiently 'significant' difference in LOTs so as to merit a CEP offset." *Dong-A Steel Company v. United States*, 475 F. Supp. 3d 1317, 1347 (Ct. Int'l Trade 2020). Certainly, in the absence of documentation or quantitative

PUBLIC DOCUMENT

evidence that could affirm the relative "weight" of the various selling functions, Commerce was not obligated to take GFCL at its word.

GFCL claims that it supported its claimed differences in selling activities by including certain selling expense information with its questionnaire responses. *See* GFCL Comments at 10. For example, "GFCL reported warehousing expenses in the United States on behalf of GFL Americas LLC but did not have *any* expenses for home market sales . . . . The exhibits referenced by GFCL also show that GFCL incurred commissions expenses in the United States but did not in the home market{.}" *Id.* at 10-11. This information supposedly showed that "there are various expenses that GFCL did not incur in the home market which are incurred in the U.S. market, or vice-versa." *Id.* at 11. Unwittingly, GFCL demonstrates the clear insufficiency of its approach to documenting selling expenses. CEP offsets are granted when home market sales are made at a "more advanced" level of trade than U.S. sales – i.e., selling expenses in the home market are *greater*, justifying a *reduction* in the normal value of home market sales. 19 U.S.C. § 1677b(7)(B). However, GFCL blithely asserts that "there are various expenses that GFCL *did not incur in the home market* which are

12

incurred in the U.S. market," apparently under the belief that it need only have demonstrated value-neutral differences in selling expenses between levels of trade. GFCL Comments at 11 (emphasis added). In fact, where selling expenses are greater in the U.S. market than in the home market, the logic of a CEP offset is undone. *See Micron Technology, Inc.*, 243 F.3d at 1305 ("The effect {of a CEP offset} is to reduce the price of the more advanced level of trade by 'indirect selling expenses' that have been included in the price on the apparent theory that such costs would not have been incurred if the sale had been made on a less advanced level of trade."). Through GFCL's indifference to this crucial distinction, the company essentially digs its own grave.

GFCL protests that its intentions were good and that it was foiled by Commerce's own failure to "define{} the information expected in response to its request for a quantitative analysis." GFCL Comments at 13. However, "{t}he interested party that is in possession of the relevant information has the burden of establishing to the satisfaction of the Secretary the amount and nature of a particular adjustment." 19 C.F.R. § 351.401(b)(1). GFCL's claim is a mere attempt to shift this burden away from itself and onto Commerce. If GFCL was unclear about which

PUBLIC DOCUMENT

information Commerce would accept as satisfactory, it was GFCL's responsibility to ask. *See SeAH Steel Corp. v. United States*, 659 F. Supp. 3d 1318 (Ct. Int'l Trade 2023) ("{T}he responsibility lies not with the agency, but with {the respondent} to clarify its understanding of the questionnaire in the event of confusion or claimed ambiguity."). GFCL's conclusion that it "provided the information *it believed* to comprise a quantitative analysis" is thus of no moment. GFCL Comments at 13 (emphasis added). GFCL was obligated to provide information that *Commerce* found satisfactory. Because GFCL failed to provide such information, Commerce's determination is supported by substantial evidence.

## III. Conclusion

For the foregoing reasons, we respectfully request that this Court uphold Commerce's determination on remand that GFCL failed to demonstrate its eligibility for a CEP offset.

Respectfully submitted,

/s/  Luke A. Meisner
Roger B. Schagrin
Luke A. Meisner
Nicholas C. Phillips*
SCHAGRIN ASSOCIATES
900 Seventh Street, NW
Suite 500
Washington, DC 20001
(202) 223-1700
*Counsel to Daikin America, Inc.*

*Admitted only in New York. Practice
limited to matters before federal
courts and agencies.

Dated: November 15, 2024

PUBLIC DOCUMENT

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief contains 2,508 words (including text, quotations, footnotes, headings, and attachments) and therefore complies with the word limitation set for in the Court's Chamber's Procedures.


Dated: November 15, 2024                    _/s/   Luke A. Meisner_

                                            Luke A. Meisner

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| _____ ) | |
| DAIKIN AMERICA, INC., ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | Court No. 22-00122 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| *Defendant,* ) | |
| ) | |
| and ) | |
| ) | |
| GUJARAT FLUOROCHEMICALS ) | |
| LIMITED, ) | |
| ) | |
| *Defendant-Intervenor.* ) | |
| _____ ) | |

## <u>PROPOSED REMAND ORDER</u>

Upon consideration of the Final Results of Redetermination

Pursuant to Court Remand ("Remand Redetermination") filed on July

12, 2024 by the U.S. Department of Commerce ("Commerce"), the

Comments in Partial Opposition to the Remand Redetermination and

the Comments Supporting Remand Redetermination in Part filed by

the parties in the above-captioned proceeding, the administrative record, and all other papers and proceedings herein, it is hereby

**ORDERED** that the Remand Redetermination is affirmed with respect to Commerce's determination that Defendant-Intervenor Gujarat Fluorochemicals Limited failed to demonstrate its eligibility for a constructed export price offset; and it is further

**ORDERED** that all other aspects of the Remand Redetermination be remanded pursuant to the Comments in Partial Opposition to the Remand Redetermination and Proposed Remand Order filed by Plaintiff Daikin America, Inc. on September 17, 2024.


It is **SO ORDERED**.


_____

M. Miller Baker, Judge


Dated:        _____, 2024
             New York, New York


2